KRUPA ET AL., APPELLANTS, *v.* WESTERN UNION
TELEGRAPH CO., APPELLEE.

(No. 4516—Decided March 26, 1951.)

*Mr. C. William O'Neill,* attorney general, and *Mr.
J. A. Robenalt,* for appellants.

*Messrs. Ohlinger, Koles, Wolf & Flues,* for appellee.

FESS, J.  This is an appeal on questions of law from
a judgment of the Common Pleas Court reversing the
decision of the Unemployment Compensation Board
of Review which allowed the claim for benefits of the
individual appellant, Anna Krupa.  The claimant, as
well as the board, appeals.

Prior to March 8, 1949, claimant had been employed
for a period of some six years by the appellee, the
Western Union Telegraph Company.  On February 8,
1949, she was informed that there would be no more
work for her in Toledo after March 8th and that she
should decide whether she was interested in a transfer
to similar employment in Detroit, Michigan, or wheth-
er she would prefer to receive severance pay under the
terms of the contract between her employer and the
union.  On April 11, 1949, she elected to receive her
severance pay in the gross amount of $1,160.64.

After her separation on March 8, 1949, claimant was
unsuccessful in securing other employment.  At the

time of filing her initial claim on March 16, 1949, she was physically able and desirous of securing work and was available therefor. She had a base-period employment of more than 24 calendar weeks and her highest base-period quarterly earnings exceeded $591. Her claim, initially allowed, was thereafter disallowed by the administrator who found that claimant had elected to receive severance pay and had resigned from the service of the employer; that she was to receive $46.80 per week for 24 weeks and 4 days; and that she was entitled to severance pay until August 26, 1949. The administrator concluded that the claimant had not suffered and would not suffer loss of remuneration during the period covered by her separation pay.

Upon claimant's appeal to the board of review, her claim was referred to a referee, who after a hearing reversed the administrator's decision and found claimant eligible to receive benefits under the terms of the initial determination. In so holding, he found that the severance pay she received on April 11, 1949, was for services rendered prior to March 8, 1949; that she rendered no services to the employer after such date so she could receive no remuneration allocable to any period subsequent to March 8, 1949; and that the receipt of severance pay on April 11 did not disqualify her for unemployment compensation.

Thereafter, the application of the employer for leave to institute a further appeal was disallowed by the board, one member dissenting, from which decision an appeal was taken to the Common Pleas Court, which reversed the decision of the board and thereby denied unemployment compensation to the claimant. The journal entry merely recites that the decision of the board that the claimant is eligible to receive benefits is reversed. We may assume, however, that the reversal is based upon the statutory grounds that the de-

cision was either unlawful, unreasonable, or against the manifest weight of the evidence.

The record of the hearing before the referee consists merely of narrative statements of the claimant and the traffic manager of the employer and certain exhibits. These exhibits disclose that the employer notified the claimant on February 8, 1949, that there would be no work for her in the Toledo office after March 8, 1949. Thereafter, on March 4, 1949, claimant elected to receive severance pay in accordance with the terms of the union contract. Upon her separation from employment, the employer, in accordance with the law, gave her a Bureau of Unemployment Compensation form entitled ''separation report'' upon which the employer indicated that the reason for separation was ''resigned.''

To the report there were attached slips reciting that ''this employee last worked on March 8, 1949, but received a legally required severance allowance of 24 weeks and 4 days pay at $46.80 per week until 8-26-49 in lieu of continued employment'' and ''this employee last worked on 3-8-49 but received in addition to remuneration paid for periods to the last day worked a vacation allowance of $99.16, which is the equivalent of at least full time wages up to and including 3-22-49.''

On April 11, 1949, claimant signed a receipt for the sum of $1,160.64 in full and complete payment and settlement of all claims of every nature which she might have against the employer and consented that her name be stricken from the employment rolls of the company as of March 8, 1949. The receipt also recited that she had voluntarily elected to receive severance pay in preference to all other options and rights to which her employment entitled her, including transfer, forced reduction furlough, seniority, pension and benefit rights; and that she ''hereby voluntarily

terminate my employment with the company by voluntarily resigning my position."

It is stated in claimant's brief that the traffic manager of the employer, on cross-examination, was unable to explain the basis for the statement attached to the separation slip that the severance pay was given as wages "until 8-26-49 in lieu of continued employment." Upon this record, however, we must disregard this contention inasmuch as such testimony does not appear in the record.

The union contract, which consists of 49 printed pages, throws no light upon what is meant by severance pay other than a reference in the paragraphs relating thereto to "a lump sum separation allowance." The separation slip, however, attached as an exhibit to the record, is some indication of an intention on the part of the employer to regard severance pay as remuneration for the period during which the separated employee performs no services. It is reasonable to assume that the allowance of severance pay was in consideration of length of service of employment since it was computed on the basis of past service and loss of seniority, pension and other benefits which the employee must relinquish incident to the acceptance of such severance pay. It may also be assumed that the purpose of the payment was to tide the separated employee over a possible period of unemployment.

The only provisions of the Unemployment Compensation Act which bear upon the question here involved are to be found in the following sections of the General Code.

Section 1345-1, General Code (122 Ohio Laws, 695), as here relevant, provided:
"* * *

"d. 'Benefits' mean money payments payable to an individual, as provided in the Unemployment Com-

pensation Act, for loss of remuneration due to his unemployment.

"* * *

"f. 'Remuneration' means all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash. * * *

"* * *

"k. An individual shall be deemed 'totally unemployed' in any week during which he performs no services *and* with respect to such week no remuneration is *payable* to him." (Italics added.)

Section 1345-7, General Code, as pertinent here, provides:

"a. No benefits shall be paid for any week with respect to which an individual is receiving or *has received* remuneration in the form of

"(1) Remuneration in lieu of notice * * *." (Italics added.)

The regulations of the board recite that remuneration in lieu of notice constitutes a continuation of wages for a designated period after termination of employment, and that the period covered by remuneration in lieu of notice is to be considered a period of employment and so reported. Remuneration in lieu of notice normally relates to a situation where an employee is entitled to several weeks' notice prior to separation. However, when no work is available the employee is separated but his wages are paid to him for the period during which he would be entitled to employment. During such a compensated period of unemployment the employee would not be entitled to benefits.

It will be noted that the employee is entitled to benefits in any week during which he performs no services *and* with respect to such week no remuneration is *payable* to him. He must be unemployed and receive

no remuneration from his employer during the period of such unemployment in order to qualify for benefits.

It is the contention of the employer that, inasmuch as it pays a substantial amount by way of severance pay upon which it in turn contributes unemployment compensation, it is unjust to permit a separated employee who receives such a substantial allowance to tide her over the period of unemployment to likewise receive unemployment compensation and thereby affect the employer's merit rating. On the other hand, if the consideration for the payment of the severance pay is attributable to length of service and loss of seniority, retirement and other benefits, and is not for the purpose of reimbursing an employee for loss of the opportunity to work, the contention falls. However, upon the state of the record in the instant case, where there is some evidence from which it may be inferred that the severance pay was remuneration for the period of unemployment up to August 1949, we can not find and determine that there was prejudicial error in the judgment of the Common Pleas Court reversing the decisions of the referee and the board of review.

*Judgment affirmed.*

Conn, J., concurs.

Carpenter, J., dissenting. I am in accord with the statement of facts and comments in the majority opinion except for the last sentence wherein it concludes that "there is some evidence from which it may be inferred that the severance pay was remuneration for the period of unemployment up to August, 1949." The only competent evidence on that subject was the contract between the company and the union.

In two instances the record contains statements which are conclusions drawn by someone from the evi-

dence. In the "local claims examiner's report to the central office," signed by Genevieve Dale and dated March 31, 1949, there is a finding that claimant was to receive severance pay and the report concludes, "evidently not eligible for benefits to 8-26-49." On this report the administrator denied the claim for benefits. The denial was reversed by the board of review.

Attached to the referee's report to the board are two slips referred to and quoted in the majority opinion. One says the severance allowance "was in lieu of continued employment" until August 26, 1949. The other says that claimant had received $99.16 vacation allowance "which is the equivalent of at least full time wages up to and including 3-22-49." While these two slips are with other similar slips which were properly identified as exhibits and are referred to in the record, no marks of identification appear on them and no reference is made to them in the record. Why they were attached to this record is not apparent to me. However, the statements on these slips being mere conclusions, they are not important unless they can be drawn from the terms of the contract.

In my analysis of the relations of the claimant to her employer, the Western Union Telegraph Company, and her compensation or remuneration rights arising thereunder, I see three sources: (1) Her direct and personal contract of employment under which was defined the work she was to do and the remuneration or wages she was to receive; (2) the contract her union made with the employer for the benefit of her and all other employes; and (3) the statutes of Ohio, particularly the Unemployment Compensation Act.

From the first source mentioned claimant became entitled to the weekly wages which she received during the period of her employment,

The contract made by the union with her employer

(the second source mentioned) contains many stipulations involving remuneration, among which are a provision for two weeks annual vacation with pay and, under section 23, a provision entitled ''Technological Displacements.'' This provision covers claimant's loss of employment. Under the provision for technological displacement, there were five options available to claimant, one of which was acceptance of severance pay.

This option is defined in the contract as follows:

''Severance pay. Any employee who has, or who will have, two years or more of company service some time during the year in which the conversion is effected may choose to be paid a lump sum separation allowance. The separation allowance shall be determined on the basis of four weeks' pay at the regular rate of the position last occupied, for every year of service, and two days' pay for every month in which the employee worked in any period remaining that is less than a full year. The acceptance by an employee of a lump sum separation allowance under this proviso *terminates his service with the company.*'' (Emphasis added.)

There was some quibbling about how claimant was separated from her employment, due to the fact that in her statement electing to take severance pay, which statement was obviously prepared for her by the company, she said she ''resigned.'' There is no question that her separation was involuntary and at the instance of the employer because of lack of work for her.

The real question here is: What was her severance pay for? Was it to relieve the employer, indirectly, for the loss that would accrue to it in contributions to the unemployment compensation fund if benefits were allowed to her under the statute for her period of unemployment following her discharge, or was it meant to compensate for the loss of rights and credits that had

accrued to her over the six years and two months of faithful service to her employer?

What did she lose by way of rights and credits?

She lost her seniority rights and accumulated credits under the pension plan which the company, under its contract with the union, provided for its employees. This is made manifest in section 23 of that contract, under which the first option accorded a discharged employee is "acceptance of pension if eligible." Mrs. Krupa was 26 years and 4 months old when discharged and not eligible for the pension.

Both seniority and pension rights have assumed much significance in modern industrial life because such rights are valuable to employees as a part of their way of life. Wages are geared into large industries, such as this company, with such considerations in mind. Six years of this young woman's life were spent working for the Western Union Telegraph Company. When she becomes employed in some other industry her seniority rights and pension credits, if there be such in the industry which employs her, will have to start anew.

To my mind there are some similarities between these credits, particularly the pension rights, in industrial life and the cash surrender value of a policy of a reserve life insurance company.

When by the surrender of the policy the insurer is relieved of obligation to pay the principal sum of the contract, it returns to the insured the reserve built up out of the premiums paid by the insured. So the employer, when relieved of the possible future pension claims of an employee, by the severance pay, returns to him the reserve established for payment of the pension—money which otherwise would have been paid to that employee in wages from week to week, in this case, during a six-year and two-month period.

The judgment as it now stands invalidates the advantages of the union contract made for the claimant and other employees. The union contract waives for her her right to benefits under the Unemployment Compensation Act, something she herself could not do, for Section 1345-9, General Code, says: ''No agreement by an employee to waive his rights to benefits under this act shall be valid * * *.''

Can a union do for a member that which he can not do for himself?

It is urged that if this claimant is permitted to take her severance pay and also receive unemployment benefits she will get double pay for a period. If she were successful in getting employment when her service with the company terminated, it might be equally well reasoned that she should refund her severance pay, otherwise she would be getting double pay and would not need the money. The latter suggestion may sound absurd but is no more so than the argument that the severance pay takes the place of the right to benefits to which she would be entitled except for the credit she had built up with the company and received in severance pay. If that pay were so intended, the contract should so provide. Nowhere in it is that even suggested, and the company does not contend that it is.

It is interesting to note that no decision of any court on this question has been cited by diligent counsel. The boards of review of many states have discussed it and are divided on the answer. Some of these decisions, adverse to the allowance of benefits, have been cited and quoted. Some have been by divided boards and in some the reasoning has been exceedingly labored.

The judgment of the Court of Common Pleas should be reversed and the order of the board affirmed.