FORD MOTOR COMPANY, APPELLEE, *v.* ADMINISTRATOR, OHIO BUREAU OF EMPLOYMENT SERVICES, ET AL., APPELLANTS.

[Cite as Ford Motor Co. *v.* Ohio Bur. of Emp. Serv. (1991), 59 Ohio St. 3d 188.]

(No. 90-242—Submitted January 15, 1991—Decided May 15, 1991.)

*Taft, Stettinius & Hollister, Martin McHenry* and *David S. Shankman,* for appellee Ford Motor Company.

*Lee I. Fisher,* attorney general, and *Merl H. Wayman,* for appellants Administrator, Ohio Bureau of Employment Services, and Unemployment Compensation Board of Review.

*Stewart Jaffy & Assoc. Co., L.P.A.,* and *Stewart R. Jaffy,* urging reversal for *amici curiae,* Ohio AFL-CIO and United Autoworkers.

*Walter J. Mackey,* urging affirmance for *amici curiae,* Ohio Manufacturers' Association, Ohio Chamber of Commerce, and Ohio Council of Retail Merchants.

H. Brown, J. This court has recognized that an employee who, pursuant to a labor-management agreement, accepts termination in lieu of a reassignment or involuntary layoff is entitled to unemployment compensation benefits. *Bockover* v. *Ludlow Corp.* (1986), 23 Ohio St. 3d 190, 23 OBR 352, 492 N.E. 2d 149. This case asks us to decide whether an employee is entitled to unemployment benefits where the employer, due to lack of work for its employees, offers a plan of voluntary termination and an employee, who because of seniority would not have been laid off or reassigned, consents to termination under the terms of the employer's plan. For the reasons which follow, we conclude that the employee is eligible and reverse the judgment of the court below.

## I

### Eligibility

In general, an employee who leaves voluntarily without just cause—a so-called "voluntary quit"—is ineligible to receive unemployment compensation benefits. See R.C. 4141.29(D)(2)(a). Before 1974, this rule applied to employees who accepted a layoff under the terms of a collective bargaining contract or an established employer policy which provided the option of accepting a lower-rated job or of "bumping" into a position held by a fellow employee with less seniority. See former R.C. 4141.29 (134 Ohio Laws, Part I, 91, 128-129); Legislative Services Commission, Analysis of Am. Sub. S.B. No. 52 (July 25, 1973) 4 ("LSC Summary").

In 1973, the General Assembly enacted a series of amendments to R.C. 4141.29(D), effective in 1974, to create exceptions to the "voluntary quit" rule. 135 Ohio Laws, Part I, 201, 242-243; *Bockover, supra,* at 194, 23 OBR at 355, 492 N.E. 2d at 149.[1]

One such exception is found in R.C. 4141.29(D)(2)(a)(ii). This statute states in pertinent part:

"* * * [N]o individual may serve a waiting period or be paid benefits under the following conditions:

"* * *

"(2) For the duration of his unemployment if the administrator finds that:

"(a)  He quit his work without just cause or has been discharged for just cause in connection with his work, provided division (D)(2) of this section does not apply to the separation of a person under any of the following circumstances:

"* * *

"(ii)  Separation from employment pursuant to a labor-management contract or agreement, or *pursuant to an established employer plan,* program, or policy, *which permits the employee, because of lack of work,* to accept a separation from employment[.]" (Emphasis added.)

Landra Guy was not personally

---

[1] This legislation was apparently spawned as part of a comprehensive proposal for reform of the unemployment compensation laws, submitted by the Unemployment Compensation Advisory Commission (established by R.C. 4141.08). According to this proposal as it appears in the appendix to the brief of appellee filed in this court, the commission stated:

"The proposal updates the law by recognizing that it is desirable in many industries to keep productive efficiency by stabilizing the work force to reduce the movement of skilled personnel from their particular skills during a reduction in work force; and, at the same time, to give protection to those workers who have acquired equities in their employment through length of service. The proposal does not vitiate the qualifications for benefit eligibility but only makes them amenable to our industrial practice."

faced with the possibility of being laid off or of being forced to accept a lower-rated job. However, it is undisputed that Ford offered the VTP in order to reduce the number of its employees due to a lack of work. In other words, lack of work necessitated the elimination of some employees; the question was: which employees? Thus, we come to the central question posed by this appeal: does the phrase "lack of work" in R.C. 4141.29(D)(2)(a)(ii) refer to a lack of work for the particular claimant, or for the employer's work force as a whole?

Ford and its supporting *amici* contend that the phrase "lack of work" in R.C. 4141.29(D)(2)(a)(ii) refers to a lack of work for the particular employee who files for unemployment compensation, and that the statute is intended to protect only employees who choose not to accept reassignment or exercise "bumping" rights. This interpretation renders the statute meaningless. Employees who choose not to accept reassignment or exercise "bumping" rights are protected by R.C. 4141.29(D)(2)(b)(i), which was also enacted as part of the 1974 amendments. 135 Ohio Laws, Part I, at 243; *Bockover, supra.* If there is no work for a particular employee, there is no reason for the employer to offer that employee an incentive to leave—the employer will simply lay the employee off. Even before the 1974 amendments, an employee in this situation would qualify for unemployment compensation.

On the other hand, if we read this phrase as referring to a lack of work in that portion of the employer's work force covered by the VTP, then R.C. 4141.29(D)(2)(a)(ii) serves to create an exception to the "voluntary quit" rule for participants in a VTP. As a matter of economics, an employer will not reduce its work force, by layoffs or other means, unless it has more employees than it needs—in other words, a "lack of work" for some of its employees. When such a reduction becomes necessary, the employer may (as Ford did in the instant case) choose to ask more senior employees to volunteer to leave before involuntarily laying off employees in inverse order of seniority. If the employer deems it advantageous to make such an offer, the employer must provide some sort of incentive to encourage employees to volunteer. The advantage to the employer lies in the elimination of employees who draw higher salaries and require more expensive health care insurance, thus saving the employer money in the long run. Whether it is a senior employee who volunteers to leave (such as the claimant in the instant case, Landra Güy) or a junior employee who is laid off because no one volunteered, the job has still been eliminated due to a "lack of work" within the employer's work force.

"The presumption always is, that every word in a statute is designed to have *some* effect, and hence the rule that, 'in putting a construction upon any statute, every part shall be regarded, and it shall be so expounded, if practicable, as to give some effect to *every part of it.*'" (Emphasis *sic.*) *Turley* v. *Turley* (1860), 11 Ohio St. 173, 179 (citing *Commonwealth* v. *Alger* [Mass. 1851], 7 Cush. 53, 89); see, also, R.C. 1.47(B) ("In enacting a statute, it is presumed that * * * [t]he entire statute is intended to be effective * * *.").

As we have noted, R.C. 4141.29 (D)(2)(a)(ii) would be rendered meaningless if we accept Ford's construction of the statute. Further, by the plain language of the statute, an exception to the "voluntary quit" rule is created for an employee who accepts termination under a plan offered by the employer due to a lack of work.

Landra Guy is precisely such an employee.

Accordingly, in order to give meaning to the statute at issue, we hold that an employee who elects voluntary termination under a plan or policy adopted by the employer to reduce the number of employees due to a lack of work in the employer's overall work force is entitled to unemployment compensation under R.C. 4141.29(D)(2)(a)(ii).

## II

### Setoff

Ford and its supporting *amici* further argue, in support of their construction of the statute, that it would be inequitable for Landra Guy to draw unemployment compensation while also receiving a substantial sum from her employer. While R.C. 4141.29 does not contain any financial or equitable criteria for unemployment compensation eligibility, the General Assembly has provided in R.C. 4141.31(A)(4) for a setoff in the amount of any "* * * separation or termination pay paid to an employee at the time of his separation from employment[.]" A question of fact is presented: is a payment to a departing employee "separation or termination pay" within the meaning of R.C. 4141.31(A)(4) or the sale of an asset, namely, the sale of the employee's seniority and pension rights? See *Budd Co.* v. *Mercer* (1984), 14 Ohio App. 3d 269, 14 OBR 298, 471 N.E. 2d 151; *Krupa* v. *Western Union Tel. Co.* (1951), 90 Ohio App. 90, 46 O.O. 443, 103 N.E. 2d 784; *Schleicher* v. *General Motors Corp.* (June 22, 1984), Trumbull C.P. No. 83-CV-884, unreported; *Sigley* v. *Bd. of Review* (Nov. 14, 1984), Trumbull C.P. No. 83-CV-1112, unreported.

In its initial appeal to the court of common pleas, Ford asserted that the payments it made to Guy under the VTP should have been set off against her unemployment compensation benefits. In the court of appeals, Ford argued the setoff issue as an alternative ground for affirmance in the event the court reversed on the issue of eligibility. Our review of the record indicates that this issue was not considered by either of the courts below. Whether the payments to Guy were a purchase of assets or constitute separation pay is primarily a question of fact. The determination should be considered first by the trial court. Accordingly, we remand the case for consideration of the setoff issue.

*Judgment reversed and cause remanded.*

MOYER, C.J., HOLMES and WRIGHT, JJ., concur.

SWEENEY, DOUGLAS and RESNICK, JJ., concur in part and dissent in part.

DOUGLAS, J., concurring in part and dissenting in part. I concur in the syllabus and the well-reasoned discussion of the majority in Part I of the opinion, finding that Landra Guy, pursuant to R.C. 4141.29(D)(2)(a)(ii), is entitled to unemployment compensation benefits. I respectfully dissent from the judgment and discussion of the majority, as found in Part II of the opinion, to remand the cause to the trial court for a determination as to whether R.C. 4141.31(A)(4) permits the payments made to Guy under the voluntary termination plan ("VTP") to be set off against her unemployment compensation benefits. I feel compelled to dissent because what the majority gives with its left hand in Part I of the opinion, it takes away with its right hand in Part II of the opinion.

With respect to Part II of the opinion, it is questionable, in my mind,

whether this court has jurisdiction to remand the issue of setoff to the trial court. Ford did not cross-appeal this issue nor did Ford succinctly advance this issue as an assignment of error, pursuant to R.C. 2505.22,[2] in either the court of appeals or to this court. Therefore, even though Ford in its second proposition of law before this court asserts that Guy's benefits must be reduced by the amount of separation pay Guy received from Ford, it is indeed arguable whether the right to setoff pursuant to R.C. 4141.31(A)(4) is properly before us. However, even if it were appropriate to remand this issue to the trial court, I believe R.C. 4141.31(A)(4), by its own terms, clearly is not applicable to the case at bar.

In 1963, R.C. 4141.31 was amended to include subsection (A)(4). See Am. Sub. H.B. No. 222, 130 Ohio Laws 978. R.C. 4141.31(A)(4) provided (and currently provides) that:

"Benefits otherwise payable for *any week* shall be reduced by the *amount of remuneration* a claimant receives *with respect to such week* as follows:
"* * *

"(4) *Remuneration in the form of separation or termination pay paid to an employee* at the time of his separation from employment[.]" (Emphasis added.)

Literally construed, R.C. 4141.31(A)(4) only provides for a reduction in weekly unemployment compensation benefits when an employee receives *remuneration in the form of separation or termination pay for that week*. It is clear that the payments made to Guy by Ford pursuant to the VTP were not *remuneration* in the form of separa-

tion pay or *payments for any particular week*.

Ford, in an attempt to reduce its work force, created a voluntary termination plan. The plan was specifically designed to entice higher salaried and seniority workers to accept a separation from employment. Ford's likely objective was to retain workers with a lower salary and seniority which would effectively reduce its payroll. At the time of her separation, Guy was forty-four years old and had been employed by Ford for thirteen years. Upon learning that Ford did not intend to promote her, Guy accepted the terms of the VTP although she was not faced with the possibility of a layoff because of her high seniority. By agreeing to the VTP and accepting the payments thereto, Guy gave up her job with her employer and, consequently, *sold* her employment rights, her seniority rights, and all reasonably anticipated benefits such as a full retirement pension. It is clear that the payments made to Guy were, in actuality, the purchase and sale of assets (Guy's rights to employment and benefits), and not severance or termination pay as contemplated by R.C. 4141.31 (A)(4).

Furthermore, R.C. 4141.31(A)(4) is clearly inapplicable because the statute is irreconcilable and cannot be harmonized with R.C. 4141.29(D)(2)(a)(ii). In 1973 (approximately ten years *after* R.C. 4141.31 was amended by [A][4]), the General Assembly substantially amended R.C. 4141.29(D)(2)(a) by adding subsection (ii). See Am. Sub. S.B. No. 52, 135 Ohio Laws, Part I, 201, 242-243. Subsection (ii) *removes the disqualification for*

---

[2] R.C. 2505.22 provides that:

"In connection with an appeal of a final order, judgment, or decree of a court, assignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part. The time within which assignments of error by an appellee may be filed shall be fixed by rule of court."

*unemployment benefits* when an employee has accepted a separation from employment under the terms of a labor contract or employer plan because of a lack of work. At the time, the General Assembly took no action to amend R.C. 4141.31(A)(4). Neither statute contains a cross-reference to the other. If R.C. 4141.31(A)(4) is found to provide for setoff, then the statutes are irreconcilable and cannot be harmonized. R.C. 1.52(A) requires that when two statutes are irreconcilable, the one last enacted must prevail. Thus, R.C. 4141.29(D)(2)(a)(ii) must prevail over R.C. 4141.31(A)(4). Accordingly, the judgment of the court of appeals should be reversed and the decision of the board reinstated.

SWEENEY, J., concurs in the foregoing opinion.

ALICE ROBIE RESNICK, J., concurring in part and dissenting in part. I concur in the syllabus and Part I of the majority opinion. I must respectfully dissent, however, from the latter portion of that opinion which remands this cause to the trial court for a determination as to whether the payments to Guy were a purchase of assets or separation pay.

Ford argued to the trial court that the payments to Guy were separation pay, and as such Ford should be entitled to a setoff against her unemployment benefits. In its decision, the trial court stated that it "* * * considered all of the evidence, brief of Appellant, Ford Motor Company, * * * and the arguments of the parties * * *." From the very wording of the trial court's decision, it is readily apparent that said court considered Ford's argument regarding any possible setoff. Indeed, the reason Ford made this argument is because the Unemployment Compensation Board of Review's referee had

held that the payment "which * * * [Landra Guy] received in lump sum termination pay at the time of her separation, is in effect the purchase and sale of an asset, and not payment for services rendered. * * *" The board of review concluded that the referee was correct in holding that "the lump sum payment * * * is not deductible from unemployment compensation payments * * *." Therefore, the record establishes that the issue regarding setoff has been litigated and decided at all levels. While the court of appeals did not expressly state it considered Ford's argument concerning a setoff, it is not beyond reason to assume that an appellate court has examined any and all arguments made to that court. Therefore, I cannot agree with the majority's declaration that "the record indicates that this issue was not considered by either of the courts below. * * *"

The majority concludes that "[w]hether the payments to Guy were a purchase of assets or constitute separation pay is primarily a question of fact." Although this may be an accurate statement, the referee and the board of review have already decided the question. As noted above, both the referee and the board determined that the payments to Guy were essentially the purchase of assets and not separation pay. Hence, there is no need to remand this case to the trial court. In this type of administrative appeal, the trial court *does not* sit as the trier of fact. Rather, R.C. 4141.28(O) states that "* * * [i]f the [trial] court finds that the decision was unlawful, unreasonable, *or against the manifest weight of the evidence*, it shall reverse and vacate such decision or it may modify such decision * * *; otherwise such court shall affirm such decision. * * *" Consequently, there is no issue to be resolved. The order of the board of review should be reinstated.