The **UNIROYAL GOODRICH TIRE COMPANY, Appellant,**

v.

**OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Oklahoma Employment Security Commission Board of Review, and Clentis R. McCarroll, Appellees.**

No. 85174.

Court of Appeals of Oklahoma,
Division No. 1.

Feb. 13, 1996.

Gary W. Farabough, Bickford, Pasley & Farabough, Ardmore, for Appellant.

Cara Nicklas, Oklahoma City, for Appellees, Oklahoma Employment Security Commission & Board of Review.

Gregory L. Johnson, Ardmore, for Appellee, Clentis R. McCarroll.

## MEMORANDUM OPINION

JOPLIN, Judge:

Appellant The Uniroyal Goodrich Tire Company (Employer) seeks review of the trial court's order affirming the decision of the Appellee Oklahoma Employment Security Commission (OESC) to allow unemployment compensation benefits to Appellee Clentis R. McCarroll (Claimant). In this appeal, Employer asserts error of both law and fact in allowing unemployment benefits to Claimant after Claimant voluntarily quit work upon acceptance of Employer's offer of enhanced early retirement benefits, i.e., retirement benefits in excess of those which Claimant was entitled and would have received for his actual years of service. We hold the trial court erred in allowing Claimant unemployment benefits under such circumstances, and reverse.

Claimant worked for Employer for over twenty-two years. In 1993, Employer announced an intent to reduce its company-wide workforce either by the offer of early retirement to eligible employees or unspecified "other means." Under the terms of the early retirement offer, participating employees would receive (1) an additional $175.00 monthly payment over and above the employee's ordinary monthly pension benefit, (2) a lump sum cash benefit calculated by reference to years of service, in this case between $16,000.00 and $20,000.00, and (3) medical/prescription drug insurance benefits at the current nominal premium rate of $8.00 per month; in the event an employee elected not to accept the early retirement offer, the offer would be withdrawn, although an employee would remain eligible for ordinary retirement benefits with higher insurance premiums, then slated to increase to $80.00 per month. Claimant, then 59 years old, and six years away from the retirement age under Employer's existing retirement plan (age 65), accepted the early retirement offer, and retired from his job on December 31, 1993.

Claimant then applied for unemployment benefits. OESC allowed benefits, finding:

Employer offered a salaried separation plan for which claimant met requirements and elected to take the offer voluntarily separating from employment. It is determined this would constitute a forced resignation since the employer offered the incentive to the claimant.

Employer sought review before an OESC hearing officer. At that hearing, Claimant testified that he elected to participate in the early retirement program because he could not afford to "lose" the added benefits available thereunder, i.e., the additional monthly pension benefit, the lump sum cash payment, and the reduced cost insurance coverage, which benefits would not be available to those who elected to remain on the job and not participate in the early retirement offering. Claimant also testified that he was concerned about to what "other means" Employer might turn to affect the announced reduction in work force, speculated that "other means" might include forced layoffs, but adduced no evidence that Employer did anything other than offer early retirement to certain eligible employees; to the contrary, in fact, a personnel specialist for Employer testified that none of the workers in Claimant's unit had been laid off, that Claimant would still be working if he had not elected early retirement, and that Employer had been forced by Claimant's retirement to assign Claimant's previous and essential quality control duties to another employee. Upon consideration of the evidence, the hearing officer found Claimant entitled to benefits, concluding:

The employer solicited the claimant's retirement by announcing its plans to reduce it [sic] staff by offering an early retirement program or other means, if necessary, and indicating a future retirement would be less desirable. It is concluded, therefore, the claimant voluntarily quit her [sic] job with good cause connected with the employment.

On Employer's request for further review, the OESC Board of Review affirmed the appellate tribunal hearing officer's order. Employer then petitioned for review before the trial court, and the trial court also affirmed. Employer appeals.

Employer here asserts the trial court erred as a matter of both law and fact in affirming the OESC decision. In particular,

Employer argues that when an employee voluntarily retires from the employment, the employee has not left the employment for "good cause connected with the work," and as such is disqualified for unemployment benefits by statute. 40 O.S.1991 § 2–404. *See also, Denby v. Bd. of Review,* 567 P.2d 626, 630 (Utah 1977); *Paoloco v. Commonwealth,* 10 Pa.Cmwlth. 214, 309 A.2d 594 (1974).

OESC responds, arguing that "an employee who elects voluntary termination under a plan or policy adopted by the employer to reduce the number of employees due to a lack of work in the employer's overall work force is entitled to unemployment compensation." *Ford Motor Company v. Ohio Bureau of Employment Services,* 59 Ohio St.3d 188, 571 N.E.2d 727, 730 (1991). Claimant responds, first arguing that the scheduled increase in insurance premiums constituted a "substantial" reduction in pay justifying his retirement. *R & R Engineering Co. v. OESC Board of Review,* 737 P.2d 118, 119 (Okla.1987) ("substantial" reduction in pay constituted "good cause" for employee to voluntarily leave the employment, and employee not disqualified for unemployment benefits). *See also, Steinberg Vision Associates v. Unemployment Compensation Board of Review,* 154 Pa.Cmwlth. 486, 624 A.2d 237, 240 (1993) (employer's unilateral discontinuation of reimbursement of medical benefit premiums resulting in reduction of employee's pay constituted good cause for employee to voluntarily quit the employment). Claimant further argues that a voluntary retirement does not *per se* disqualify a claimant from unemployment benefits, and that potential withdrawal of the offer of enhanced retirement benefits constituted "good cause connected with the work" as to render the award of benefits proper. *Cf., American Petrofina Company of Texas v. Texas Employment Commission,* 795 S.W.2d 899, 902 (Tx.App. 1990) (employees' election for early retirement upon employer's change in method of calculation of retirement benefits resulting in reduction of employees' retirement benefit constitutes non-disqualifying good cause reason to quit the employment).

██ The underlying purpose of the Oklahoma Employment Security Act, 40 O.S. § 1–101 et seq., is to avoid the "economic insecurity due to unemployment" by "setting aside compulsory reserves to be used for the benefit of persons *unemployed through no fault of their own.*" (Emphasis added.) 40 O.S. 1991 § 1–103; *Vester v. Bd. of Review of Ok. Employment Security Commission,* 697 P.2d 533, 536 (Okla.1985). In this vein, where an employee leaves the employment "voluntarily without good cause connected to the work," the employee is disqualified for unemployment benefits. 40 O.S. § 2–404.

"Good cause for voluntarily leaving work under Section 2–404 may include, among other factors, a job working condition that had changed to such a degree it was so harmful, detrimental or adverse to the individual's health, safety or morals, that leaving such work was justified...." 40 O.S. § 2–405. The "other factors" language of § 2–405 has been construed to apparently allow consideration of any matters which bore on and ostensibly justified the employee's decision to voluntarily leave the work in reaching a "good cause" determination. *R & R Engineering Co. v. Oklahoma Employment Sec. Com'n, Bd. of Review,* 737 P.2d 118, 119 (Okla.1987).

 In the appellate review of OESC orders, "the findings of the Board of Review as to the facts, if supported by the evidence, shall be conclusive and the jurisdiction of [the district] court shall be confined to issues of law." 40 O.S.1991 § 2–610(1). As elsewhere noted:

[T]he district court sits as an appeal tribunal and its jurisdiction is limited to consideration of the transcript and the argument of the respective attorneys thereon.... [I]n an appeal, such as was perfected herein, the district court is limited to determinations whether an error of law was committed in the hearing and whether or not the findings are supported by the evidence introduced.

*Vester,* 697 P.2d at 536; *In re White,* 355 P.2d 404, 406 (Okla.1960). The issue of "good cause" for leaving the work constitutes a question of fact, and on appeal, the OESC determination thereof will not be disturbed if

supported by the evidence adduced. *R & R Engineering Co.,* 737 P.2d at 119. However, a decision of the OESC contrary to the underlying purpose of the Oklahoma Employment Security Act is erroneous as a matter of law. *Vester,* 697 P.2d at 536 ("[A]doption by the Appeals Tribunal referee of a definition of misconduct which definition requires only an act or course of conduct detrimental to an employer's best interest, without the element of willfulness or culpable negligence, to be contrary to the expressed purpose and intent of the Oklahoma Employment Security Act, and to be erroneous as a matter of law.")

In our view, what facts and circumstances constitute "good cause" for voluntarily leaving the employment *in any event* "*must* reflect the underlying purpose of the [employment security] act to relieve against the distress of involuntary employment." *Toothaker v. Maine Employment Security Commission,* 217 A.2d 203, 207 (Me.1966) (Emphasis added.) Thus, in harmony with the underlying purpose of the Oklahoma Employment Security Act to compensate *only* those employees who through no fault of their own lose their job, an employee who voluntarily leaves the work must show a *compelling* reason therefor to meet the "good cause" requirement:

> "Good cause" has been defined as "such cause as would similarly affect persons of reasonable and normal sensitivity, and is limited to those instances where the unemployment is *caused by external pressures so compelling* that a reasonably prudent person, exercising ordinary common sense and prudence, would be justified in quitting under similar circumstances."

*Denby,* 567 P.2d at 630.

Under these authorities, we hold the voluntary acceptance of enhanced early retirement benefits *does not* as a matter of law constitute such a "compelling" reason for leaving the workforce as to amount to "good cause connected to the work." While the offer of substantial financial retirement inducements over and above those to which an employee is otherwise entitled might seem "compelling" in the literal sense of the word, such inducements are not, in our opinion, the kind of "compelling" "pressures" "connected to the work" contemplated by the Employment Security Act to protect only those employees, *through no fault or other non-volitional act of their own,* lose their job. To construe the provisions of the Employment Security Act otherwise, it seems to us, allows an unemployment claimant to accept not insubstantial financial inducements to *voluntarily quit* the work force, and at the same time collect unemployment benefits intended only for claimants who have been *involuntarily forced* to leave the workforce, a result diametrically opposed to the underlying purpose of the Act.

We are not here faced with a situation presented in *R & R Engineering Co.,* where employees voluntarily quit the job in the face of a *potential reduction* in pay, or in *American Petrofina,* where employees elected early retirement in the face of an *actual reduction* in retirement benefits. *R & R Engineering Co.,* 737 P.2d at 119; *American Petrofina,* 795 S.W.2d at 902. Rather in the present case, Claimant faced a potential *increase* in retirement benefits, while retaining *all* the benefits under the existing company retirement plan which he could have reaped at age 65 had he elected to remain on the job, and we find the offer and acceptance of a retirement benefit *over and above* that to which Claimant remained entitled distinguishes the present case from the cited cases. We are likewise not presented with a situation as in *Ford Motor Company,* in that case although allowing unemployment benefits to a claimant who (because of seniority did not face potential lay off as a consequence of employer's reduction in force) elected enhanced early retirement benefits, Ohio statute specifically excepting this type of voluntary termination of employment from operation of the "voluntary quit" disqualification. *Ford Motor Company,* 571 N.E.2d at 730.

We therefore conclude Claimant is not entitled to unemployment benefits upon his voluntary acceptance of Employer's offer of enhanced early retirement benefits, such an award clearly inconsistent, in our view,

with the underlying purpose of the Employment Security Act. We consequently find the OESC's conclusion of Claimant's forced retirement and "good cause" for voluntarily leaving the work unsupported by the law, and hold the trial court erred in affirming that decision.

The order of the trial court is REVERSED.

JONES, P.J., and GARRETT, J., concur.