DECISION AND JUDGMENT ENTRY
Tammy Cline resigned from her job at Electronic Data Systems Corporation ("EDS") because she felt that EDS did not take sufficient remedial steps after she complained that a supervisor sexually harassed her. The Ohio Bureau of Employment services ("the Bureau") denied Cline's subsequent application for unemployment benefits, and the State of Ohio Unemployment Compensation Board of Review ("the Board") affirmed the Bureau's denial of benefits. The Washington County Court of Common Pleas reversed, finding that the Board's decision was against the manifest weight of the evidence. EDS appeals, asserting that the trial court independently weighed the evidence and substituted its own judgment for that of the Board. We agree. Accordingly, we reverse the judgment of the trial court.
 I.
Cline worked full-time as a day shift computer operator at EDS. According to Cline, an EDS supervisor, Bob Briley, began to make unwanted sexual advances toward her during the summer of 1995. Cline rebuffed Briley's advances, but did not inform EDS of his actions. Shortly thereafter, for reasons unrelated to this action, EDS transferred Cline from the day shift to the midnight shift. Briley worked the day shift, but his working hours occasionally overlapped with Cline's, and the harassment continued.
In December 1995, Cline requested that EDS transfer her to a data communications job that had opened on the day shift. Cline preferred the day shift because it enabled her to spend more time with her son. Additionally, Cline felt that, while the frequency of her contact with Briley would increase on the day shift, the harassment would subside because more co-workers were present during the day shift. Cline testified that Briley called her into his office in late December, informed her that she needed to improve her work attendance, threatened to fire her, and offered to give Cline the data communications job if she submitted to his sexual advances. Cline refused. After that December incident, Briley made no further advances toward Cline.
EDS selected another candidate for the data communications job in January 1996. Cline later told her former supervisor, Terry Dyer, that she felt that Briley sexually harassed her and discriminated against her by giving her co-worker the data communications job. Dyer gave Cline the toll free number that EDS established to handle such complaints and recommended that she contact the employee relations department. Cline did not take Dyer's advice, but she contacted an attorney.
On February 23, 1996, Cline called her immediate supervisor to inform him that she was ill and would not come into work that night. Cline's supervisor informed her, per Briley, that she needed to come into work or risk being fired. Cline called her attorney, who contacted EDS corporate headquarters on Cline' s behalf to report that Briley sexually harassed Cline. EDS immediately placed Cline on a paid leave of absence and investigated her complaint.
Following its investigation, EDS sent Cline a letter assuring her that "[a]ppropriate actions based on [her] allegations have been taken." EDS offered Cline the option of either (1) returning to her midnight shift position until a day shift for which she was the most qualified candidate became available, or (2) remaining on the EDS payroll for sixty days while EDS assisted her in searching for another position within EDS. EDS also informed Cline that it had taken measures to ensure that she would not be subject to future sexual harassment, nor to retaliation for reporting harassment.
Cline determined that neither of the options EDS offered was satisfactory. Therefore, she resigned and filed a claim for benefits with the Bureau. The Bureau denied Cline's claim, finding that she resigned without just cause. Cline appealed to the Board, which held a hearing on her claim and affirmed the Bureau's initial determination. In its findings of fact, the Board found that Cline was subjected to unwanted sexual advances and propositions made by Briley. However, the Board concluded that Cline did not afford EDS sufficient opportunity to rectify the situation before quitting.
Cline appealed the Board's decision to the trial court. The trial court reversed, finding that Cline quit her employment with just cause. Specifically, the trial court found that the Board erred in its determination that a person of ordinary intelligence in Cline's position would not have felt compelled to quit.
EDS appeals the trial court's decision, asserting that the trial court erred by determining that the Board's decision was unreasonable, unlawful or against the manifest weight of the evidence. EDS maintains that the trial court improperly substituted its own judgment for the Board's judgment.
 II.
Upon appeal of a Board decision, the reviewing court, whether a trial court or court of appeals, must affirm the Board's decision unless the decision is unlawful, unreasonable, or against the manifest weight of the evidence. See R.C. 4141.28(0)(1);Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, 696. Under this standard of review, the reviewing court must affirm the Board's finding if it is supported by evidence in the record. Irvine v. Unemployment Comp. Bd. of Rev.
(1985), 19 Ohio St.3d 15, 18. On close questions,"[w]here the board might reasonably decide either way, the courts have no authority to upset the board's decision." Id. citing CharlesLivingston Sons, Inc. v. Constance (1961), 115 Ohio App. 437.
Under R.C. 4141.29(D)(2)(a), an employee who leaves his or her employment without just cause is ineligible to receive unemployment benefits. Ford Motor Co. v. Ohio Bur. of Emp. Serv.
(1991), 59 Ohio St.3d 188, 189. "Just cause" to terminate employment exists if a person of ordinary intelligence would conclude that the circumstances justify terminating the employment. Warrensville Heights v. Jennings (1991), 58 Ohio St.3d 206,207; Irvine, 19 Ohio St.3d at 17. In determining whether just cause exists in a particular case, the Board must consider whether granting benefits will serve the underlying purpose of unemployment compensation, to provide financial assistance to individuals who become unemployed through no fault of their own. Irvine at 17; Krawczyszyn v. Ohio Bur. of Emp.Serv. (1989), 54 Ohio App.3d 35, 38. The Board must determine just cause on a case by case basis, because "whether just cause exists necessarily depends upon the unique factual considerations of the particular case." Irvine at 17.
Sexual harassment may constitute just cause to terminate employment. Krawczyszyn at 36-37. However, generally the employee "must make reasonable efforts to attempt to solve the problem before leaving their employment." DiGiannantoni v. WedgewaterAnimal Hosp., Inc. (1996), 109 Ohio App.3d 300, 307. An employee who quits without giving the employer an opportunity to solve the problem ordinarily is considered to have quit without just cause.Id.; Krawczyszyn at 37.
Cline contends that the fact that she gave EDS notice of the harassment proves that she had just cause to terminate her employment. However, notice alone is not sufficient to establish just cause. DiGiannantoni at 308. The purpose of notice is to "give the employer an opportunity to solve the problem before the employee quits the job." DiGiannantoni at 307; Krawczyszyn at 37. Merely notifying the employer of the problem, without giving the employer the opportunity to correct the problem, does not accomplish this goal. See, e.g., Thake v. Unemployment Comp. Bd.of Rev. (1990), 67 Ohio App.3d 503, (holding that, despite employee's initial notification to her employer of a health problem, employee did not possess just cause when she quit without informing the employer that its accommodations proved to be insufficient)
In contrast, where an employee's initial complaints do not prompt the employer to change her working conditions, the employee may be relieved of her duty to further pursue internal remedies. Krawczyszyn at 37. Likewise, "an employee need not indefinitely subject herself to abusive conduct while waiting for her employer to respond." Id. Additionally, an employee with a reasonable fear for her personal safety possesses just cause to quit her job; the employee " cannot be expected to remain on the job until an actual physical assault takes place." Taylor v. Bd.of Rev. (1984), 20 Ohio App.3d 297, 299.
In this case, the Board determined that Cline was subjected to unwanted sexual advances. The Board further found that EDS "immediately conducted an investigation and that, had Cline afforded EDS the opportunity, EDS would have monitored Briley to ensure that Cline would not be subjected to harassment again.
Evidence in the record supports the Board's determination. Cline made her only attempt to follow the EDS grievance procedure, despite her knowledge of it, several months after the harassment began. Cline did not follow through with EDS's internal grievance procedure. Rather, she informed EDS of the harassment and, without returning to work to determine whether EDS remedied the situation, she quit. EDS did not ask Cline to indefinitely subject herself to harassment by Briley. Instead, EDS prevented further harassment by placing Cline on a paid leave of absence, and asking her to return to work only after informing her that it had taken measures to remedy the situation. The record does not contain any evidence that Briley ever threatened to physically harm Cline.
The remainder of the Decision and Judgment Entry shall remain as originally released.
All Judges Concur
In Nunc Pro Tunc Entry
FOR THE COURT
Roger L. Kline, Presiding Judge.
Finally, although Cline worked through January and most of February 1996, Cline stated that Briley did not harass her after December 1995. Thus, Cline had not been subjected to harassment for some time prior to the investigation, and had no reason to believe that the harassment would resume after the investigation.
Based upon these facts, the Board found that a person of ordinary intelligence would not have felt compelled to terminate her employment with EDS until she returned to work and determined whether Briley would continue to initiate offensive contact with her. Although this court, if acting as the finder of fact, may have reached a different conclusion, we cannot substitute our judgment for that of the Board.
Because the determination of just cause necessarily depends upon factual considerations, and because the Board's decision is supported by facts in the record, we must affirm the judgment of the Board. Thus, we find that the trial court erred by overturning the Board's decision.
Accordingly, we sustain EDS's assignment of error and reverse the judgment of the trial court.
JUDGMENT REVERSED.