Judgment reversed<br>and cause remanded.

WOLFF, P.J., and DONOVAN, J., concur.

---

VERIZON NORTH, INC., Appellant,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES et al., Appellees.

[Cite as *Verizon N., Inc. v. Ohio Dept. of Job & Family Servs.*, 170 Ohio App.3d 42, 2007-Ohio-112.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–06–22.

Decided Jan. 16, 2007.

Todd L. Sarver and E. Michael Rossman, for appellant.

Jim Petro, Attorney General, and Patria V. Hoskins, Assistant Attorney General, for appellees.

Rogers, Presiding Judge.

{¶ 1} Appellant, Verizon North, Inc. ("Verizon"), appeals the judgment of the Marion County Court of Common Pleas, affirming the determination of the Ohio Unemployment Compensation Review Commission ("the Commission") that appellees, who are former employees of Verizon, were eligible to receive unemployment compensation. On appeal, Verizon asserts that the trial court erred by failing to rule that the employees were disqualified from receiving unemployment compensation because they had voluntarily quit work without just cause, not due to a lack of work. Finding that the Commission's judgment was not unlawful, unreasonable, or against the manifest weight of the evidence, we affirm the judgment of the trial court.

{¶ 2} In the fall of 2003, Verizon implemented a nationwide management voluntary separation plan ("the MVSP") designed to provide enhanced cash payments and improved pension benefits to management employees who volunteered to leave Verizon. Under the terms of the MVSP, employees who enrolled between October 1, 2003, and November 15, 2003, would separate from employment at Verizon on November 22, 2003, and cash payments and pension benefits would be disbursed after January 1, 2004.

{¶ 3} Verizon did not set any caps or restrictions on the number of employees eligible to enroll in the MVSP, and it is undisputed that enrollment in the MVSP was voluntary. Those employees who opted to enroll in the MVSP could rescind at any time before November 22, 2003.

{¶ 4} In Ohio, 163 employees, including the 97 employees in this appeal, opted to participate in the MVSP. Following their separation from Verizon under the MVSP, the employees sought unemployment-compensation benefits. After review of the employees' applications for benefits, the director of the Ohio Department of Job and Family Services, an appellee, determined that although the employees had voluntarily quit employment from Verizon without just cause under R.C. 4141.29(D)(2)(a), they were still entitled to receive unemployment-compensation benefits because they had quit "pursuant to an established employer plan, program, or policy, which permits the employee, because of lack of work, to accept a separation from employment."[1]  R.C. 4141.29(D)(2)(a)(ii).

---

1. We note that the director initially determined that the employees were ineligible to receive benefits. The director later issued "redeterminations" to the employees, informing them that

{¶ 5} Verizon administratively appealed the director's determination, after which the Ohio Department of Job and Family Services transferred jurisdiction to the Commission.

{¶ 6} In May of 2005, the Commission held a hearing, at which the following testimony was adduced:

{¶ 7} Verizon's Manager of Employee Services, Sharon Hankins, testified that the MVSP was implemented to reduce operation costs in response to recent changes in the telecom industry, to provide flexibility to refocus its business on new product areas and backfill vacated positions with employees whose skills matched new technologies, and to manage significant personnel turnover expected in 2004 as a result of possible changes to pension options. Hankins further stated that although a reduction in force was not the main purpose behind the MVSP, it was probably contemplated; that the MVSP was not implemented because of a lack of work; that the MVSP was completely voluntary; that over 16,000 management employees nationwide participated in the MVSP; and that Verizon had hired 241 new management employees in Ohio as of the hearing date, but she did not know how many new management employees had been hired nationwide.

{¶ 8} One of the employees, Lori Weber, testified that on September 17, 2003, Hankins forwarded an e-mail about the MVSP to management employees. The e-mail provided a quote from Verizon's executive vice-president for Human Resources, Ezra Singer, in which he stated, "Given the current environment, a voluntary program is appropriate now. It is better for morale, and the organization rebounds faster than it would under an involuntary program." Weber stated that she had interpreted the e-mail to mean that the MVSP was designed to prevent the implementation of layoffs. Weber also testified that Verizon told employees that if insufficient numbers signed up for the MVSP, a further reduction in force could be implemented and that when asked whether Verizon could guarantee that management employees' positions would be secure, Verizon responded that it "could not guarantee that there wouldn't be any further reductions made."

{¶ 9} In addition to the testimony, several exhibits were introduced into evidence at the Commission hearing. The employees submitted Verizon's October 1, 2003 notification letter to employees, which provided, "[W]e are pleased to inform you that you are among a group of employees who are eligible to volunteer for a reduction in force (RIF)."

---

they were entitled to receive benefits based upon the "lack of work" exception under R.C. 4141.29(D)(2)(a)(ii).

{¶ 10} Verizon also submitted several exhibits, including transcripts of broadcast addresses by its president and board chairman, Larry Babbio, given on September 9 and November 7, 2003. In the September 2003 address, Babbio discussed job-security issues and stated, "[M]ore competition essentially meant less business for us," and "[O]n top of that, just a few days before the [union] contract expired, we were forced to take back as a result of an arbitrator's decision, over 3,000 employees that we previously let go or laid off." In his November 2003 address, Babbio noted, "[I do] not see a pickup in many parts of [Verizon's] business"; that "voluntary downsizing plans" would help contain costs; that Verizon expected "at least 15,000 managers and associates will take the package and be off the payroll by late November"; and that Verizon would "quickly replace supervisors of our customer-facing employees. [Verizon's] goal is to replace them internally * * *. But we will not backfill every available vacancy."

{¶ 11} Additionally, Verizon submitted the September 17, 2003 e-mail referred to by Weber in her testimony, question and answer sheets that Verizon provided to employees regarding the MVSP, a copy of the separation and release form signed by employees participating in the MVSP, which acknowledged that the MVSP was voluntary, several other e-mails forwarded by Hankins containing information about the MVSP, and a letter to Marion employees explaining the reasons for the MVSP.

{¶ 12} In October 2005, the Commission affirmed the director's determination that the employees were entitled to receive benefits because, although they had quit without just cause, they had quit pursuant to an established employer plan that permitted them to separate from employment due to a lack of work under R.C. 4141.29(D)(2)(a)(ii). Specifically, the Commission found that the documents submitted into evidence—particularly the transcripts from Babbio's broadcasts, the September 17 e-mail from Hankins, the October notification letter, and some of Verizon's responses on the question and answer sheets[2]—contravened Verizon's contention that the MVSP was not implemented due to a lack of work.

---

**2.** {¶ a} The Commission focused specifically on Verizon's following responses to three questions:

{¶ b} Q1: Why is Verizon providing the [MVSP]?

{¶ c} A: While Verizon is the leader in the telecom industry, this is a very challenging time for us. We face significant competition as customers take advantage of alternative technologies and regulators open our network to competitors. As a result, we must reduce our costs to stay competitive and preserve our financial strength. Therefore, Verizon has created the [MVSP] to stimulate voluntary management reductions and provide additional financial security to eligible employees who volunteer to leave the company under this program during the volunteer period of October 1 through November 15, 2003, and whose last day on payroll is November 22, 2003.

{¶ d} Q5: How many employees does Verizon expect will leave the company?

{¶ 13} Verizon timely appealed the Commission's decision to the Marion County Court of Common Pleas.[3]

{¶ 14} In May 2006, the trial court affirmed the Commission's decision, finding that the Commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence. In making its determination, the trial court stressed that while evidence supporting Verizon's argument existed before the Commission, evidence supporting the employees' argument was also present. In particular, the trial court emphasized that the transcripts from Babbio's broadcasts, the September 17 e-mail from Hankins, the October notification letter, some of Verizon's responses on the question and answer sheets, and Weber's testimony supported the Commission's findings that the employees were entitled to receive benefits because they had quit pursuant to an established employer plan that permitted them to separate from employment due to a lack of work.

{¶ 15} It is from this judgment that Verizon appeals, presenting the following assignment of error for our review.

The trial court erred in affirming the Commission's determinations that allowed unemployment benefits to the individual appellees and by failing to rule that the individual appellees were disqualified from receiving benefits because they voluntarily quit work without just cause and that the lack of work exception, R.C. 4141.29(D)(2)(a)(ii), is inapplicable.

{¶ 16} In its sole assignment of error, Verizon asserts that the trial court erred in affirming the Commission's decision. Specifically, Verizon contends that the trial court erred in failing to find that the employees were disqualified from receiving benefits because they had voluntarily quit work without just cause under R.C. 4141.29(D)(2)(a), and that the "lack of work" exception, R.C. 4141.29(D)(2)(a)(ii) is inapplicable.[4]

---

{¶ e} A: We expect several thousand management employees will take advantage of this program. We also plan to offer a voluntary program for eligible East associates this year. These two voluntary programs are designed to enable the company to meet its workforce reduction needs for the rest of the year, and position us for 2004 and beyond.

{¶ f} Q100: If I volunteer and separate under this voluntary program, will I be eligible for rehire?

{¶ g} A: Yes. If you are a management employee, you are eligible for rehire after six months from your last day worked, regardless of whether you have commenced a distribution from your pension plan. * * * In light of the pressures facing Verizon and the telecommunications industry, the company does not expect or intend to rehire many former employees.

3. R.C. 4141.282(A) provides that "[a]ny interested party, within thirty days after written notice of the final decision of the [Commission] was sent to all interested parties, may appeal the decision of the Commission to the court of common pleas." If the party appealing is an employer, it must appeal to the common pleas court where the employer is "a resident or has a principal place of business in this state." R.C. 4141.282(B).

4. We note that Verizon is appealing only the Commission's and trial court's finding that the lack of work exception applies to preclude the employees' disqualification from benefits.

{¶ 17} R.C. 4141.282 governs the review of Verizon's appeal, which provides: The court shall hear the appeal upon receipt of the certified record provided by the [C]ommission. If the court finds that the decision of the [C]ommission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the [C]ommission. Otherwise, the court shall affirm the decision of the [C]ommission. R.C. 4141.282(H).

{¶ 18} An appellate court may reverse the Commission's decision regarding "just cause" only if it is unlawful, unreasonable, or against the manifest weight of the evidence. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 696, 653 N.E.2d 1207; *Bentley v. Ohio Dept. of Job & Family Servs.*, 3d Dist. No. 5-02-16, 2002-Ohio-3385, 2002 WL 1434084. This same standard of review applies at each judicial appellate level, including the common pleas court, the court of appeals, and the Supreme Court of Ohio. *Tzangas*, 73 Ohio St.3d at 696, 653 N.E.2d 1207; *Bentley*, 2002-Ohio-3385, 2002 WL 1434084, ¶ 13.

{¶ 19} "A reviewing court can not usurp the function of the triers of fact by substituting its judgment for theirs." *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d 41, 45, 23 O.O.3d 57, 430 N.E.2d 468. The decision of purely factual questions is primarily within the purview of the Commission. Id., citing *Brown–Brockmeyer Co. v. Roach* (1947), 148 Ohio St. 511, 518, 36 O.O. 167, 76 N.E.2d 79. A reviewing court's jurisdiction is limited to a review of the record that was created from the administrative proceedings before the Commission. *Bindas v. Admr., Ohio Bur. of Emp. Servs.* (1990), 8th Dist. No. 57425, 1990 WL 125456, citing *Brown–Brockmeyer Co.*, 148 Ohio St. 511, 36 O.O. 167, 76 N.E.2d 79. "The role of the common pleas court, upon an appeal from the [Commission's] decision, is limited to determining whether the [Commission's] decision is supported by evidence in the record." *Bindas*, 8th Dist. No. 57425, 1990 WL 125456, citing *Kilgore v. Bd. of Rev.* (1965), 2 Ohio App.2d 69, 31 O.O.2d 108, 206 N.E.2d 423, and *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 161, 11 OBR 242, 463 N.E.2d 1280.

{¶ 20} R.C. 4141.29(D) governs employee disqualification from benefits and provides:

Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

\* \* \*

---

Neither party disputes the finding that the employees quit without just cause under R.C. 4141.29(D)(2)(a).

(2) For the duration of the individual's unemployment if the [D]irector finds that:

(a) The individual quit work without just cause * * *.

However, an exception exists within R.C. 4141.29(D) when the separation from employment is "pursuant to an established employer plan, program, or policy, which permits the employee, because of lack of work, to accept a separation from employment." R.C. 4141.29(D)(2)(a)(ii).

{¶ 21} Here, Verizon argues that the "lack of work" exception under R.C. 4141.29(D)(2)(a)(ii) does not apply because no evidence exists in the record to indicate that the MVSP was due to a lack of work and because the employees were never threatened with a layoff or a cut in work hours. Verizon relies heavily on *Bindas*. In *Bindas*, the Commission determined that the "lack of work" exception under R.C. 4141.29(D)(2)(a)(ii) did not apply to employees who opted for an early buy-out retirement program that would allow an employer to hire new workers at a lower rate of pay. *Bindas*, 8th Dist. No. 57425, 1990 WL 125456. The buy-out program was part of the employees' labor agreement and was voluntary. Employees who participated in the program later sought unemployment-compensation benefits. The administrator of the Ohio Bureau of Employment Services allowed the receipt of benefits, determining that the program constituted a voluntary layoff. The Unemployment Compensation Board of Review reversed, and the Cuyahoga County Court of Common Pleas affirmed. In affirming the Board of Review and the trial court, the Eighth District noted that it was undisputed that the program was not implemented due to a lack of work or to effectuate a layoff and that the employees did not introduce evidence to the contrary. Instead, the Eighth District found that the program was voluntary and was intended to cut labor costs without instituting wage concessions. Id.

{¶ 22} Conversely, the appellees rely on *Ford Motor Co. v. Ohio Bur. of Emp. Servs.*, (1991), 59 Ohio St.3d 188, 571 N.E.2d 727, in support of their argument. In *Ford Motor*, the Ohio Supreme Court held that the "lack of work" exception under R.C. 4141.29(D)(2)(a)(ii) applies to an employee who elects voluntary termination under a plan adopted by an employer, even though the employee, because of seniority, would not otherwise have been laid off or reassigned. Ford Motor expected large-scale layoffs in its Sharonville, Ohio plant and implemented a voluntary-termination plan in order to reduce its workforce without resorting to involuntary layoffs. The employee opted to participate in the plan and then applied for, and was granted, unemployment-compensation benefits following her voluntary termination. The Unemployment Compensation Review Board affirmed the allowance of benefits. The Hamilton County Court of Common Pleas reversed, and the First District Court of Appeals affirmed. In reversing the

decisions of the appellate courts, the Supreme Court held that it was undisputed that Ford Motor had implemented the plan due to a lack of work and that although the employee would not be laid off, the "lack of work" exception applied to allow the employee to receive benefits due to the lack of work in the overall workforce. *Ford Motor Co.*, 59 Ohio St.3d at 190–191, 571 N.E.2d 727.

{¶ 23} We agree with the trial court, which noted that the facts of the case sub judice do not fit squarely within either of the cases relied upon by the parties. Unlike the situation in *Bindas*, where the employees presented no evidence of a lack of work and an analysis of R.C. 4141.29(D)(2)(a)(ii) was never undertaken, the employees here did present evidence to support its contention that the MVSP was implemented due to a lack of work. Moreover, unlike the situation in *Ford Motor*, where the parties did not dispute that the employer program had been implemented because of a lack of work, the parties here do dispute whether Verizon implemented the MVSP for that reason.

■ {¶ 24} Although facts in the record supported Verizon's argument, the facts emphasized by the Commission and reiterated by the trial court, namely, the transcripts from Babbio's broadcasts, the September 17 e-mail from Hankins, the October notification letter, Weber's testimony, and some of Verizon's responses on the question and answer sheets also support the Commission's finding that Verizon implemented the MVSP due to a lack of work.[5] Given that the Commission could have reasonably decided the issue in favor of either party, we cannot find that the trial court's judgment was unlawful, unreasonable, or against the manifest weight of the evidence. See, e.g. *Charles Livingston & Sons, Inc. v. Constance* (1961), 115 Ohio App. 437, 438, 21 O.O.2d 65, 185 N.E.2d 655 ("Where the [Commission] might reasonably decide either way, the courts have no authority to upset the [Commission's] decision"); *Stoll v. Owens Brockway Glass Container, Inc.*, 6th Dist. No. L–02–1049, 2002-Ohio-3822, 2002 WL 1732119 ("In reviewing the [C]ommission's decision, an appellate court has the duty to determine whether the decision is supported by the evidence in the record; however, it

---

5. The trial court also found Verizon's argument that its hiring of 241 new management employees in Ohio subsequent to the MVSP demonstrated that it did not implement the MVSP due to a lack of work, since only 163 Ohio employees participated in the MVSP, to be unpersuasive based upon *Ford Motor*. The trial court correctly stated that the Supreme Court in *Ford Motor* held that the appropriate measure to determine lack of work is that portion of the employer's work force covered by the voluntary separation program. From this holding, the trial court opined that Verizon's statewide comparison of the numbers of employees who participated in the MVSP with the subsequent new hires was inappropriate because the MVSP was offered nationwide, and the number of new hires nationwide by Verizon was unknown. We note that the facts in the case sub judice could be distinguished from those in *Ford Motor* because *Ford Motor* dealt with a separation plan at a single plant in a single state. However, in light of the other evidence supporting the Commission's findings, we need not address this issue in order to properly resolve this case.

is not permitted to make factual findings or determine the credibility of witnesses").

{¶ 25} Accordingly, Verizon's assignment of error is overruled.

{¶ 26} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

SHAW and BRYANT, JJ., concur.