DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment that affirmed the Ohio Unemployment Compensation Review Commission's (Commission) judgment to deny unemployment compensation benefits. Roger L. Vest, plaintiff below and appellant herein, raises one assignment of error for review and determination:
 {¶ 2} "THE DECISION OF THE COURT OF COMMON PLEAS UPHOLDING THE DECISION OF THE UNEMPLOYMENT REVIEW COMMISSION IS UNLAWFUL, UNREASONABLE, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} Appellant worked for MJ Industries for almost six years. On March 21, 2003, MJ terminated his employment for job abandonment. Appellant applied for unemployment compensation and the Ohio Department of Job and Family Services (ODJFS) initially determined that MJ terminated him without just cause and awarded compensation. MJ appealed this determination and ODJFS affirmed its initial decision. MJ then appealed the redetermination to the Commission.
 {¶ 4} At the Commission hearing, appellant testified that he wanted to leave work early due to a work-related leg injury that occurred the previous week. Appellant did not see his supervisor, Paul Wampler, on the floor. Ray Scott, a union steward, advised appellant to speak with the "Lead Man," Mike Maynard. Appellant told Maynard that he did not feel well and might leave for the day after lunch. Maynard replied: "if you're not feeling good, this ain't the place to be, you know." Appellant testified that this conversation occurred sometime between ten and eleven a.m. At lunchtime, appellant left work and did not return. When appellant returned to work the following morning, his supervisor and the operations manager informed him that he had been terminated for abandoning his job.
 {¶ 5} Appellant testified that he understood the company's policy to allow him to inform the Lead Man if he intended to leave and if the supervisor was not available. Appellant stated that his supervisor was not on the floor at the time he told Maynard that he intended to leave, and that he did not see his supervisor before the left. Appellant did admit that he had a contentious conversation with his supervisor at nine a.m. In that conversation, appellant expressed concern about staffing shortages and stated that he was about ready to quit. He returned to work, however, immediately after this conversation.
 {¶ 6} Mike Maynard, the Lead Man, testified that appellant informed him that he might leave work early because he felt ill. Maynard acknowledged that he told appellant "if you're not feeling good, this ain't no place to be, you know. You might go home." Maynard also testified that he assumed appellant spoke with the supervisor who was on the floor at all times that morning.
 {¶ 7} Maynard admitted that he saw appellant leave at lunchtime, and that it was unusual for appellant to leave the work premises during the lunch hour. Maynard testified that he assumed, however, that appellant informed the supervisor that he intended to leave, and only realized otherwise later in the afternoon. After learning that the supervisor was not informed, Maynard stated that (1) he did not give appellant permission to leave, and (2) appellant told him earlier that he might need to leave work. Finally, Maynard repeatedly stated that if the supervisor is not present, an employee must inform him if they intend to leave work early.
 {¶ 8} Supervisor Paul Wampler testified that appellant did not inform him that he intended to leave work early. Wampler acknowledged that if he is unavailable, it is permissible for employees to inform Maynard if they need to leave work. Wampler testified that on the day in question, however, he was on the floor, and at his desk, until 12:15 p.m. Wampler acknowledged that he worked on a machine in the morning, within forty feet of appellant. Finally, Wampler testified regarding his discussion with appellant earlier that morning when appellant stated that he was about ready to quit the job.
 {¶ 9} After considering the evidence, the hearing officer reversed the redetermination decision and found that MJ discharged appellant for just cause. The hearing officer found that appellant knew the company policy, but failed to follow the policy. In particular, the officer found that the supervisor was available at all times and that appellant failed to notify him, as required, that he intended to leave early. In addition, the officer found that Maynard did not give appellant permission or authorization to leave. Therefore, when appellant left work early the "employer considered him to have abandoned his job." The hearing officer found this consideration reasonable, "especially in view of claimant's recent statements that he was considering quitting and that he did not care about the company." Subsequently, the trial court concluded that the decision was not unlawful, unreasonable, or against the manifest weight of the evidence. This appeal followed.
 {¶ 10} In his sole assignment of error, appellant asserts that the trial court's decision to uphold the Commission's decision is unlawful, unreasonable, and against the manifest weight of the evidence. We disagree with appellant.
 {¶ 11} Initially, we note that a reviewing court, whether a trial court or a court of appeal, must affirm the Commission's decision unless the decision is unlawful, unreasonable, or against the manifest weight of the evidence. See R.C.4141.28(O)(1); Tzangas, Plakas Mannos v. Ohio Bur. Of Emp.Servs. (1995), 73 Ohio St.3d 694, 696, 653 N.E.2d 1207, 1210. A reviewing court may not reverse the Commission's decision simply because "reasonable minds might reach different conclusions."Irvine v. Unemployment Comp. Bd. of Rev. (1985),19 Ohio St.3d 15, 18, 482 N.E.2d 587, 590; see, also, Tzangas, supra.
Rather, the reviewing court is limited to determining whether evidence exists in the record to support the Commission's decision. See Irvine, supra.
 {¶ 12} R.C. 4141.29(D)(2)(a) generally renders an employee who voluntarily leaves his or her employment without just cause ineligible to receive unemployment compensation benefits. SeeDurgan v. Ohio Bureau of Emp. Services (1996),110 Ohio App.3d 545, 674 N.E.2d 1208. Ford Motor Co. v. Ohio Bureau of Emp.Servs. (1991), 59 Ohio St.3d 188, 189, 571 N.E.2d 727, 728. "Just cause" to terminate employment exists if a person of ordinary intelligence would have concluded that the circumstances justified terminating the employment. Warrensville Heights v.Jennings (1991), 58 Ohio St.3d 206, 207, 569 N.E.2d 489, 491;Irvine, 19 Ohio St.3d at 17, 482 N.E.2d at 589 (stating that "`just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act'" (quoting Peyton v. Sun T.V.
(1975), 44 Ohio App.2d 10, 12, 335 N.E.2d 751, 752)). Furthermore, the Ohio Supreme Court has stated:
"The determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act. Essentially, the Act's purpose is `to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.' Leach v. Republic Steel Corp. (1984),176 Ohio St. 221, 223."
Irvine, 19 Ohio St.3d at 17, 482 N.E.2d at 589. The claimant bears the burden of proving that he or she is entitled to unemployment compensation benefits. Id.
 {¶ 13} Moreover, we note that "whether just cause exists necessarily depends upon factual considerations of the particular case." Id., 19 Ohio St.3d at 17, 482 N.E.2d at 590. As theIrvine court stated:
"* * * Determinations of purely factual considerations is primarily within the province of the referee and the board. Upon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest weight of the evidence. * * * Like other courts serving in an appellate capacity, we sit on a court with limited power to review. Such courts are not permitted to make factual findings or to determine the credibility of witnesses. * * * The duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record. * * * The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. * * * Moreover, `our statutes on appeals from such decisions [of the board] are so designed and worded as to leave undisturbed the board's decisions on close questions. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision."
Id., 19 Ohio St.3d at 17-18, 482 N.E.2d at 590.
 {¶ 14} Appellant asserts that he was discharged without just cause because: (1) he left this job with proper authorization from the Lead Man; (2) even if the Lead Man's statements did not constitute proper authorization, appellant's reliance on the statement was merely a reasonable misunderstanding; and (3) any potential misconduct did not rise to the level necessary for a just cause dismissal.
 {¶ 15} At the hearing, appellant admitted that he understood the company's policy that he may report to the Lead Man only when the supervisor is unavailable. Appellant claimed, however, that his supervisor was unavailable and away from the work area. Appellant's supervisor's testimony indicated, however, that he was on the floor and available for a consultation the entire morning. Maynard's testimony also supports this assertion.
 {¶ 16} This is a case of disputed facts and appellant, in essence, maintains that his testimony is more credible than Wampler's and Maynard's testimony. The Commission resolved these disputed facts, found the latter testimony more credible and concluded that the supervisor was available to employees in the work area. This finding is within the Commission's purview, as determinations of purely factual issues and witness credibility rest within its province. See Irvine, supra, at 17-18. We, as an appellate court, cannot disturb this judgment merely because reasonable minds may reach different conclusions. Id.
 {¶ 17} In his third argument, appellant asserts that the Commission erred when it found that his employer terminated him for just cause. Appellant urges us to adopt a position that prohibits the Commission from finding a just cause discharge when the employee's misconduct (1) does not result in harm to the employer, (2) is an isolated incident, and (3) the employer has never warned the employee against past behavior.
 {¶ 18} Appellant contends that his employer suffered no loss or injury when he left work because a sufficient number of employees were available to complete the work. This position does not, however, consider the fact that an employer has a right to expect an employee to remain in the workplace and to only leave work with permission.
 {¶ 19} Appellant also argues that his misconduct was an isolated incident and did not rise to a level warranting a just cause discharge. While it is true that the employer did not claim that appellant had a history of abandoning his position by leaving work without proper authorization, Paul Wampler testified that appellant engaged in a heated exchange with him that same morning. During that conversation, appellant used profanity and claimed he was ready to quit. Appellant subsequently left work without proper authorization despite the fact that his supervisor, Wampler, was available. These facts provide a context in which the Commission could find that this incident, while perhaps isolated in the broader sense, constitutes a deliberate act on appellant's part.
 {¶ 20} Next, appellant argues that his employer cannot discharge him without providing warnings for his conduct. We do not find, however, sufficient evidence of a company policy warning system for unauthorized absences. Consequently, we cannot find that the employer discharged appellant without just cause because it chose to terminate his employment immediately and without the benefit of a second chance and a formal warning.
 {¶ 21} Finally, appellant argues that the Commission erred when it implicitly found that the employer discharged him for just cause because he "quit" his position by leaving without authorization. Appellant argues that whether an employee actually quit his job cannot be determined by the reasonableness of the employer's belief, but must be determined according to the employee's intention at the time he left the position. Appellant cites Griffith v. Admin., Ohio Bureau of Emp. Serv. (Dec. 27, 1984), Cuyahoga App. No. 48301 in support of his contention.
 {¶ 22} We believe that the instant case is distinguished fromGriffith. Here, the facts were contested and appellant threatened to quit his job prior to leaving without prior authorization. In Griffith, the facts were uncontested, which allowed that court to give less deference to the judgment because its review involved determining the propriety of "the legal effect of unchallenged facts rather than the existence of such facts." Id., citing Sellers v. Board of Review (1981),1 Ohio App.3d 161; Kubelko v. Board of Review (Jan. 25, 1979), Cuyahoga App. No. 38098. Moreover, even the Griffith undisputed factual basis differs from the contested facts in this case. InGriffith, the employee argued with his plant manager over a recent pay deduction. During that argument, the plant manager ordered the employee to return to work and advised the employee that if he failed to return to work, the employer would consider him to have quit his employment. The Eighth District found that whether the employee quit depended upon the employee's mental state or intention, rather than the employer's. In the instant case, however, we note that it was not the employer who threatened to consider appellant's absence as a "quit", but the appellant who used those words before he left work without proper authorization. Also in Griffith we note that the employee had already completed a normal working day and most of his overtime hours.
Here, appellant left work without completing a normal work day, and did so without proper authorization, even though he was aware of the company policy that required him to report to his supervisor when that supervisor was available.
 {¶ 23} Thus, based upon the foregoing reasons, we agree with the trial court's conclusion that the Commission's decision is not unlawful, unreasonable, or against the manifest weight of the evidence. Accordingly, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.