[Cite as *Norgart v. Ohio Dept. of Job & Family Servs.*, 2021-Ohio-812.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| TRENT NORGART, | : | |
| | : | Case No. 19CA11 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| DIRECTOR, OHIO DEPARTMENT | : | |
| OF JOB AND FAMILY SERVICES, | : | |
| ET AL., | : | **RELEASED: 03/10/2021** |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Charles A. Cohara, Athens, Ohio, for Appellee.

Dave Yost, Ohio Attorney General, and Melissa Wilburn, Senior Assistant
Attorney General, Columbus, Ohio, for Appellant.
_____

Wilkin, J.

{¶1} This is an appeal by Appellant, the Ohio Department of Job and
Family Services ("Appellant"), of an Athens County Court of Common Pleas
judgment that held Appellee, Trent Norgart ("Appellee"), was qualified to receive
unemployment compensation benefits. The trial court had reversed a decision of
the Unemployment Compensation Review Commission ("Commission") that held
Appellee was not qualified for unemployment benefits, and had to repay $156 of
benefits that he had wrongly received. Appellant asserts a single assignment of
error: the trial court erred in reversing a decision of the Commission that was
lawful, reasonable, and in line with the manifest weight of the evidence. After
reviewing the record and the applicable law, we reverse the trial court's

judgment, and reinstate the Commission's decision that found Appellee did not qualify for benefits and was required to pay $156 of benefits back to Appellant.

BACKGROUND

{¶2} After losing his full-time job at Kroner Animal Care, Appellee applied for unemployment compensation with Appellant, and eventually qualified for a benefit of $348 a week, starting on April 22, 2018.  On August 23rd and 24th of 2018, Appellee worked and trained for Buckeye Foods, aka Sonic, ("Sonic") a fast-food restaurant.  However, on August 27, 2018, he accepted employment with Larry's Dawg House and failed to return to Sonic.

{¶3} On September 8, 2018, Appellee filed another claim for benefits with Appellant naming Sonic as his "employer," and indicated that he had "[q]uit for other employment."  Appellant issued a decision that determined

> [Appellee] quit [Sonic] on 8/24/2018 for other employment.  The claimant did not meet requalifying requirements. Therefore, no benefits will be paid until [Appellee] obtains employment * * * works for six weeks, earns wages of $1,536.00 and is otherwise eligible.
> * * *
> [Appellee] has been overpaid benefits to which he/she was not entitled * * * in the amount of $156 for the week ending September 1, 2018, [which Appellee must repay].

Appellant appealed, and the appeal was referred to the Commission.

{¶4} On November 2, 2018, the Commission held a telephonic hearing, during which the Appellee testified before the hearing officer.  Sonic did not have a representative at the hearing.  Appellee testified that he took part in what he characterized as a "working interview" with the fast food restaurant, Sonic, on Thursday August 23rd and 24th, 2018.  Appellee further testified that because

August 23rd was 99-cent corn dog day, Sonic was very busy so the manager instructed Appellee to go home and come back on the 24th. Appellee testified that he showed up the next day and completed documentation for employment, including forms for direct deposit and taxes. He further testified that after several hours on the 24th, the manager had an emergency, so he was told to leave and come back the following Thursday, August 30th. Appellee testified that over the weekend, Larry's Dawg House ("Larry's") called and offered him a job, which Appellee accepted, and he began working for Larry's on Monday, August 27, 2018. Appellee testified that he called Sonic on Tuesday, August 28th and asked if Sonic was ready to hire him and Sonic told him "no we're still waiting for Thursday." Appellee testified that he then contacted Sonic and informed Sonic that he decided to work for Larry's, and then Sonic asked Appellee "So, are you going to work both jobs?" Appellee admitted that Sonic paid him for his work on August 23rd and 24th, but continued to maintain that Sonic never offered him a job. Appellee testified that he was still working at Larry's at the time of the hearing.

{¶5} Subsequent to the hearing, the Commission issued a decision that stated:

> The facts establish that [Appellee] quit [Sonic] to accept other employment. [Appellee's] argument that he was not hired by [Sonic], is without merit. Insufficient evidence has been presented to establish this claim. The requalifying requirements [obtaining new employment within seven days, working for three weeks, etc.] were not met as [Appellee] failed to work for three or more weeks and earn his average weekly wage or $180 (whichever is less) before applying for benefits. As [Appellee] quit [Sonic] to accept other employment, this is a quit without just cause, which is a disqualifying separation. As such a duration

separation is imposed.  Therefore, no benefits will be paid until the [Appellee] obtains employment subject to an unemployment compensation law, works six weeks, earns wages of $1,536.00, and is otherwise eligible.

Consequently, the Commission denied Appellee's request for review and ordered Appellee to repay the $156 in benefits that he received for the week ending September 1, 2018 pursuant to R.C. 4141.35(B).

{¶6} Appellee appealed the Commission's decision to the Athens County Court of Common Pleas, arguing that he was never employed with Sonic, so he could not have been disqualified from receiving benefits by quitting. Alternatively, he argued that even if he was employed with Sonic, and quit without cause, he met the requirements in R.C. 4141.291 to re-qualify for benefits.

{¶7} Appellant argued that Appellee was employed with Sonic, and then quit that job without just cause, which disqualified him for unemployment compensation benefits.  Appellant also argued that Appellee, after quitting could not re-qualify for benefits under R.C. 4141.291 because there is no evidence that Appellee's subsequent employer, Larry's, was Appellee's "recalled or concurrent employer."

{¶8} The trial court reversed the Commission's decision.  Finding that Ohio law and regulations are not to be interpreted to achieve an absurd result, the trial court held that Appellee's working interview with Sonic was not employment as defined in R.C. 4141.01(B)(1).  Therefore, the trial court found that the Commission's conclusion that Appellee was employed by Sonic was unreasonable and against the manifest weight of the evidence.  Consequently,

the trial court reversed the Commission's decision that denied Appellee

unemployment compensation benefits and ordered him to repay $156 of benefits.

It is from this judgment that Appellant appeals, asserting a single assignment of

error.

ASSIGNMENT OF ERROR

THE COMMON PLEAS COURT ERRED IN REVERSING A DECISION OF THE
COMMISSION THAT WAS LAWFUL, REASONABLE, AND IN LINE WITH THE
MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} Appellant argues that Appellee was employed with Sonic. Appellant

argues that the definition of employer found in R.C. 4141.10(A)(1)(a) supports

that a "working interview" is employment for purposes of unemployment

compensation law. Appellant points out that R.C. 4141.10(A)(1)(a) defines

employment as a "service performed by an individual for remuneration under any

contract," including an oral contract, unless the individual is "free from direction

and control" of the employer. Appellant argues that the record reflects that Sonic

trained Appellee for two days, paid him for those two days, and Sonic had

continued employment for Appellee thereafter, which albeit brief, it is

employment under the statutory definition.

{¶10} Appellant further argues that pursuant to R.C. 4141.29(D)(2)(a), if

an employee quits a job without just cause, he or she is ineligible to receive

unemployment compensation benefits. Appellant argues that Appellee quit his

employment with Sonic for a better paying job. Appellant argues that "just cause"

has been defined as quitting that is not the fault of the employee, and that

quitting because of dissatisfaction with wages or employment conditions does not

constitute just cause for purposes of unemployment compensation.  Appellant argues that Appellee admitted he quit Sonic for better wages and because there was less drama than at Sonic.  Therefore, Appellant argues that Appellee's quitting his employment at Sonic was without just cause, which disqualified him from receiving benefits under R.C. 4141.29(D)(2)(a).

{¶11} Accordingly, Appellant argues, because Appellee was employed with Sonic and quit without just cause for another job, the Commission's determination that Appellee was not qualified to receive benefits and was required to repay the benefits that he received the week ending September 1, 2018, was reasonable, lawful, and supported by the weight of the evidence. Therefore, Appellant argues that this court should reverse the trial court's judgment.

{¶12} In response, Appellee argues that he was never employed by Sonic within the meaning of 4141.01(B)(1).  Appellee argues that he merely engaged in a "working interview" with Sonic and was never offered a job.  Appellee cites several Ohio appellate decisions in which courts have reversed decisions by ODJFS denying benefits, finding that the employment relationship was not supported by the weight of the evidence.  *See Laukert v. Ohio Valley Hosp. Assn.*, 115 Ohio App.3d 168, 684 N.E.2d 1281 (7th Dist. 1996) and *Tucker v. Home Health Connection*, 10th Dist. Franklin No. 04-AP1262, 2005-Ohio-848. Similar to these cases, Appellee argues, the record in this case indicates that there was no employment relationship between Sonic and him.  Therefore, he argues, absent an employment relationship, there was no job from which he

could quit, and the Commission's decision that he quit employment with Sonic, which disqualified him from receiving benefits, was unlawful, unreasonable and against the manifest weight of the evidence.

{¶13} Alternatively, Appellee argues that if this court should find that he was employed by Sonic, he nevertheless re-qualified for benefits pursuant to R.C. 4141.291(A)(2). Appellee argues that under R.C. 4141.291, an employee is not disqualified from continuing to receive benefits if the employee quits work to accept other employment, which is subject to unemployment compensation law, if he or she is employed within seven days of the separation from their employment, works three weeks at the new job, and earns wages equal to one and one-half times the person's weekly wage or one hundred and eighty dollars, whichever is less. citing *Radcliff v. Artromick Internatl.*, Inc., 31 Ohio St.3d 40, 41, 508 N.E.2d 953 (1987). Appellee argues that if this court finds he was an employee who quit his job at Sonic, then he was employed within seven days of quitting Sonic with Larry's Dog House, worked for three weeks, and met the wage requirement. Therefore, he argues, he re-qualified for benefits under the R.C. 4141.291 exception.

{¶14} Accordingly, Appellee argues that this court should affirm the trial court's judgment because the Commission's decision holding that he did not qualify for benefits was unreasonable, unlawful, and against the manifest weight of the evidence.

In response to Appellant's alternative argument that he requalified for benefits, Appellant argues in its reply brief that the exception in R.C. 4141.291

applies only to claimants who are "recalled" to employment. Because there is no indication in the record that Appellee was recalled to employment by a former employer, R.C. 4141.291 does not apply to Appellee.

LAW AND ANALYSIS

1. Standard of Review

{¶15} We must affirm a decision of the Unemployment Compensation Review Commission "unless we find the decision to be unlawful, unreasonable, or against the manifest weight of the evidence." *Freed v. Unemployment Comp. Review Comm'n*, 4th Dist. Hocking No. 16CA6, 2017-Ohio-5731, 94 N.E.3d 51, ¶ 10, citing R.C. 4141.28(N)(1); *Tzangas, Plakas & Mannos v. Ohio Bur. Of Emp. Serv.*, 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995). In undertaking this review, we defer to the Commission's role as fact finder, and "may not reverse the Commission's decision simply because 'reasonable minds might reach different conclusions.' " *Parrett v. Adm'r, Unemployment Comp. Review Comm'n*, 4th Dist. Pickaway No. 16CA15, 2017-Ohio-2778, 90 N.E.3d 50, ¶ 14. Therefore, "[o]n close questions, where the board might reasonably decide either way, we have no authority to upset the agency's decision." *Id.*, citing *Irvine v. Unemployment Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18, 482 N.E.2d 587 (1985). Rather, "our review is limited to determining whether the Commission's decision is unlawful, unreasonable or totally lacking in competent, credible evidence to support it." *Id.*

2. Employment

{¶16} Appellant argues that Appellee was employed by Sonic and then quit without just cause, thereby disqualifying him from receiving unemployment benefits pursuant to R.C. 4141.29(D)(2)(a).  Appellee argues that the evidence indicates that he was never employed by Sonic, and therefore the disqualification in R.C. 4141.29(D)(2)(a) does not apply.  Specifically, he asserts that he took part in a "working interview" with Sonic for parts of two consecutive days, but it never culminated in his employment with Sonic.  Therefore, the threshold question we must address is whether Appellant's conclusion that Appellee was employed by Sonic was lawful, reasonable, and supported by the weight of the evidence.

{¶17} "The [unemployment compensation] act was intended to provide financial assistance to an individual who *had worked*, was able and willing to work, but was temporarily without employment through no fault or agreement of his own."  (Emphasis added).  *Salzl v. Gibson Greeting Cards, Inc.*, 61 Ohio St. 2d 35, 39, 399 N.E.2d 76 (1980).  Accordingly, employment is a prerequisite to seeking unemployment compensation benefits.

{¶18} Unemployment compensation is found in R.C. Chapter 4141. "Employment" is defined in R.C. 4141.01(B)(1), which states:

> Employment means *service* performed by an individual *for remuneration* under *any contract of hire*, written or oral, express or implied, including service performed in interstate commerce and service performed by an officer of a corporation, without regard to whether such service is executive, managerial, or manual in nature, and without regard to whether such officer is a stockholder or a member of the board of directors of the corporation, unless it is shown to the satisfaction of the director that such individual has been and will continue to be free from direction or control over the performance of such service, both

under a contract of service and in fact. The director shall adopt
rules to define direction or control. (Emphasis added.)

"If 'the language of a statute is plain and unambiguous and conveys a clear and

definite meaning there is no occasion for resorting to rules of statutory

interpretation,' because 'an unambiguous statute is to be applied, not

interpreted.' " *Vulgamore v. Vulgamore*, 4th Dist. Pike No. 16CA876, 2017-Ohio-

4114, ¶ 18, quoting *Sears v. Weimer,* 143 Ohio St. 312, 55 N.E.2d 413 (1944),

paragraph five of the syllabus.  R.C. 4141.01(B)(1) describes employment in

plain, broad terms, i.e. employment means performing a "service" for

"remuneration" pursuant to a "written or oral, express or implied" contract.

{¶19} Consistent with R.C. with 4141.01(B)(1)'s definition of employment,

it is undisputed that Appellee performed a service for Sonic, even if he was

simultaneously being trained for the job, and Sonic paid Appellee for that service.

So, the remaining question is whether he did so under an oral or implied

"contract of hire" from Sonic.  By and large the "evidence" in the record

addressing this issue consists of Appellee's testimony and Sonic's responses to

Appellant's request for information, and that evidence is conflicting.  For

example, Appellee testified before the Commission that he was never employed

by Sonic, but was participating only in a "working interview;" he was never

offered employment.  In contrast, Sonic claimed that Appellee was indeed

employed by Sonic, but then quit for another job.  However, after Appellee left

Sonic, and he began working for Larry's, he filed another claim for benefits with

Appellant naming Sonic as his former "*employer,*" and indicated that he had

"[q]uit for other employment." Thus, Appellee's own actions in this regard belie his assertion that he was never employed by Sonic.

{¶21} Appellee cites *Laukert v. Ohio Valley Hosp. Assn.*, 115 Ohio App.3d 168, 684 N.E.2d 1281 (7th Dist. 1996) and *Tucker v. Home Health Connection*, 10th Dist. Franklin No. 04-AP1262, 2005-Ohio-848, asserting that in each case, the trial courts found that there was insufficient evidence to support that the respective claimants were employed, and therefore could not be disqualified for quitting without just cause, similar to Appellee's situation. Both *Laukert* and *Tucker* are factually distinguishable from this case because there was significant, if not undisputed evidence, that neither claimant was ever actually employed. In contrast, there is conflicting evidence as to whether Appellee was employed with Sonic, and in evaluating that evidence, the Commission determined that Appellee was employed.

{¶22} Although it is possible that reasonable minds might reach different conclusion as to whether Appellee was employed in this case, reviewing courts, whether at the common pleas or appellate level, are not permitted to make factual findings or to determine the credibility of witnesses; their duty is limited to determining whether the evidence in the record supports the hearing officer's determination. *Tzangas, Plakas & Mannos v. Admr., Ohio Bur. Of Emp. Servs.*, 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995). Because there is some competent credible evidence in the record that Appellee was employed by Sonic as defined in R.C. 4141.01(B)(1), we do not disturb the Commission's finding that Appellee was employed with Sonic.

3. Disqualification for Benefits

{¶23} Appellant argues that quitting a job without "just cause" disqualifies a claimant from successfully seeking benefits.  Appellant also argues that quitting a job without first trying to remedy any problems with his or her employer or quitting a job for other employment is quitting without just cause for purposes of unemployment compensation.  Appellant argues that in this case, Appellee quit his job with Sonic without first trying to remedy his problems with Sonic, and instead accepted employment at Larry's.  Therefore, Appellant argues, Appellee quit his employment without just cause disqualifying him from receiving unemployment compensation.

{¶24} Appellee argues that Sonic's failure to provide him a work schedule was just cause for him to quit his job at Sonic, citing *Bethlenfalvy v. Ohio Dep't of Job & Family Servs.*, 8th Dist. Cuyahoga No. 84773, 2005-Ohio-2612, and *Huth v. Ohio Dep't of Job & Family Servs.*, 5th Dist. Tuscarawas No. 2014 AP 03 0011, 2014-Ohio-5408, 26 N.E.3d 250.

{¶25} Generally, R.C. 4141.29(A) sets out the requirements for an individual to file a claim for unemployment benefits.  However, R.C. 4141.29(D) states:

> Notwithstanding division (A) of this section, *no individual may * *
>
>  * be paid benefits under the following conditions*:
>
> * * *

(2) For the duration of the individual's unemployment if the

director finds that:

(a) The individual *quit work without just cause* * * *.  (Emphasis

added.)

**{¶26}** "R.C. 4141.29(D)(2)(a) generally renders an employee who

voluntarily leaves his or her employment without just cause ineligible to receive

unemployment compensation benefits."  *Vest v. Admr., Ohio Dep't of Job &*

*Family Serv.*, 4th Dist. Scioto No. 04CA2977, 2005-Ohio-6967, ¶ 12, citing

*Durgan v. Ohio Bureau of Emp. Services*, 110 Ohio App.3d 545, 674 N.E.2d

1208 (9th Dist. 1996); *Ford Motor Co. v. Ohio Bureau of Emp. Servs.*, 59 Ohio

St.3d 188, 189, 571 N.E.2d 727 (1991).

**{¶27}** " 'Just cause' exists if a person of ordinary intelligence would

conclude that the circumstances justify terminating the employment."  *Parrett*, 4th

Dist. Pickaway No. 16CA15, 2017-Ohio-2778, 90 N.E.3d 50, ¶ 15, citing *Irvine*,

19 Ohio St.3d at 17, 482 N.E.2d 587 (1985).  "The determination of just cause

depends on the 'unique factual considerations' of a particular case and is,

therefore, primarily an issue for the trier of fact."  *Todd v. Adm'r., v. Ohio Dep't of*

*Job & Family Serv,* 4th Scioto No. 03CA2894, Dist. 2004-Ohio-2185, ¶ 17, citing

*Irvine,* supra, at 17, 482 N.E.2d 587.  Notably, however, courts have found that

"[g]enerally, an employee who terminates employment in order to accept other

employment quits without just cause and is not eligible for unemployment

benefits, even if the employee leaves for a better paying job."  *Vinson v. AARP*

*Found.*, 134 Ohio App. 3d 176, 179, 730 N.E.2d 479 (10th Dist. 1999), citing

*Radcliffe*, 31 Ohio St.3d 40, 41, 508 N.E.2d 953 (1987); *Cardani v. Olsten Home Healthcare* , 5th Dist. Tuscarawas App. No. 97AP120083, 1998 WL 549374 (July 31, 1998); *Dickson v. Thousand Trails Resorts*, 12th Dist. Clinton App. No. CA88-06-008, 1988 WL 120780 (Nov. 7, 1988); *Cooper v. Ohio Bur. of Emp. Serv.*, Summit App. No. CA9063, (Feb. 14, 1979), et al.

{¶28} Finally, if an employee has a problem with their employer, he or she " ' "must make reasonable efforts to attempt to solve [a] problem before leaving their employment[,]" 'or else they risk a finding that they quit without just cause." *Walburn v. Ohio Dep't of Job & Family Servs.*, 4th Dist. Pike No. 08CA786, 2009-Ohio-976, ¶ 25, quoting *Cline v. State*, Washington No. 98CA5, 1999 WL 768349 (Sept. 15, 1999) *3, quoting *DiGiannantoni v. Wedgewater Animal Hosp., Inc.*, 109 Ohio App.3d 300, 307, 671 N.E.2d 1378 (10th Dist. 1996).

{¶29} In his September 8, 2018, application for unemployment compensation benefits, Appellee stated that his reason for separating from Sonic was as follows:  "Quit for other employment."  Appellee similarly indicated in Appellant's Fact Finding Information document that he chose to work at Larry's rather than return to Sonic because Larry's paid more and there was "less drama" compared to Sonic.  Finally, Sonic also asserted that Appellee "quit due to other employment opportunities."  And Appellee admitted that he never approached Sonic to address either of these issues before he quit.

{¶30} Nevertheless, Appellee argues that Sonic's failure to provide him a work schedule was just cause for him to quit his job at Sonic.  In support of his argument, Appellee cites *Bethlenfalvy v. Ohio Dep't of Job & Family Servs.*, 8th

Dist. Cuyahoga No. 84773, 2005-Ohio-2612, and *Huth v. Ohio Dep't of Job &
Family Servs.*, 5th Dist. Tuscarawas No. 2014 AP 03 0011, 2014-Ohio-5408, 26
N.E.3d 250.  In both cases, the courts found that the claimants quit their jobs for
just cause because in *Bethlenfalvy*, the claimant's pay was cut, and in *Huth*, the
claimant's hours were cut.  Although it is not clear from the record his hourly
wage, Appellee was paid during his two days of employment with Sonic, and he
quit before Sonic could schedule Appellee beyond returning to work on August
30.  Therefore, unlike *Bethlenfalvy* and *Huth* there was no evidence of any *cut* in
Appellee's wages or hours that might have made his decision to quit to be with
just cause.

{¶31} Therefore, we find that there is some competent credible evidence
that indicates Appellee quit because of working conditions, including wages, and
that he failed to seek to remedy these issues with Sonic before he quit, even
though Sonic purportedly had a grievance procedure.  Accordingly, we find that
the Commission's decision that Appellee quit his employment at Sonic without
just cause is reasonable, lawful and supported by competent credible evidence,
which disqualified him from receiving benefits.

5. Re-Qualification for Benefits

{¶32} In rejecting Appellee's appeal seeking benefits, the Commission
determined that Appellee had quit without just cause, and therefore "will remain
ineligible until [he] obtains covered employment, works six weeks, and earns the
required requalifying amount.  4141.29(D)(2) 4141.29(G) ORC."  Nevertheless,

Appellee argues that even if we find that he was employed with Sonic, and he quit without just cause, he re-qualified for benefits under R.C. 4141.291(A).

{¶33} Appellant argues that Appellee cannot not requalify for benefits under R.C. 4141.291(A) because that provision applies only to a claimant who has been recalled to work by a former employer, and Appellee was not recalled to work for a former employer.

{¶34} The Supreme Court in *Radcliffe* identified two provisions that address requalification for unemployment compensation benefits that merit discussion in addressing Appellant's argument. 31 Ohio St. 3d 40, 508 N.E.2d 953 (1987).

> The first is R.C. 4141.29, which in pertinent part states:
>
> (D) Notwithstanding division (A) of this section (under which an individual can qualify for benefits), *no individual may* serve a waiting period or *be paid benefits under the following conditions*:
> * * *
> (2) *For the duration of the individual's unemployment if the director finds that*:
> (a) *The individual quit work without just cause* or has been discharged for just cause in connection with the individual's work, provided division (D)(2) of this section does not apply to the separation of a person under any of the following circumstances:
> * * *
> (iii) *The individual has left employment* to accept a recall from a prior employer or, except as provided in division (D)(2)(a)(iv) of this section, *to accept other employment as provided under section 4141.291 of the Revised Code* * * *.
> * * *
> (G) The "*duration of unemployment*" as used in this section *means the full period of unemployment next ensuing after a separation from any base period or subsequent work and until an individual has become reemployed in employment subject to this chapter*, or the unemployment compensation act of another state, or of the United States, *and until such individual has worked six weeks and for those weeks has earned or been paid*

*remuneration equal to six times an average weekly wage of not less than:* * * * twenty-seven and one-half per cent of the statewide average weekly wage as computed each first day of January under division (B)(3) of section 4141.30 of the Revised Code * * * and has earned wages equal to one-half of the individual's average weekly wage or sixty dollars, whichever is less. (Emphasis added.)

The second is R.C. 4141.291, which in pertinent part provides:

(A) Notwithstanding section 4141.29 of the Revised Code, an

individual who *voluntarily quits work*:

(1) To accept a recall from a prior employer and establishes that the refusal or failure to accept the recall would have resulted in a substantial loss of employment rights, benefits, or pension, under a labor-management agreement or company policy;
 (2) To *accept a recall* to employment from a prior employer and cannot establish that a substantial loss of employment rights, benefits, or pension was involved in the recall *or* to *accept other employment subject to this chapter*, * * * where the individual obtains such employment while still employed or commences such employment within seven calendar days after the last day of employment with the prior employer, and subsequent to the last day of the employment with the prior employer, works three weeks in the new employment and earns wages equal to one and one-half times the individual's average weekly wage or one hundred eighty dollars, whichever is less;
(3) Shall, under the conditions specified in either division (A)(1) or (2) of this section, remove the disqualification imposed by division (D)(2)(a) of section 4141.29 of the Revised Code and shall be deemed to have fully complied with division (G) of such section.  * * *. (Emphasis added.)

{¶35} *Radcliffe* explains the interplay between these two provisions in that

if an individual is found to have quit employment without just cause, [g]enerally,

unemployment benefits are fully suspended until the individual becomes

reemployed in employment subject to an unemployment compensation law,

works six weeks, earns the requisite amount of wages and is otherwise eligible,

pursuant to R.C. 4141.29(G). 31 Ohio St. 3d at 41, 508 N.E.2d 953, (1987).  But,

"R.C. 4141.291 provides a special exception to R.C. 4141.29(G) for persons who

voluntarily quit their employment" and otherwise satisfy the additional

requirements in R.C. 4141.291(A).  *Id.*

{36} Appellee claims that even if he is disqualified from receiving benefits

because he quit without just cause, he requalified under the special exception,

R.C. 4141.291.  Appellant argues that Appellee cannot not requalify for

unemployment compensation benefits because R.C. 4141.291 only permits a

claimant who is "recalled to work by a prior employer" to requalify for

unemployment compensation benefits and Appellee was never "recalled" to

employment.

{¶37} We begin our analysis by disagreeing with Appellant's *interpretation*

of R.C. 4141.291.  Under R.C. 4141.291(A)(1), a claimant can requalify for

benefits if he or she is "recalled to work for a prior employer if failure to accept

the recall would have resulted in a substantial loss of employment rights, benefits

or pension * * *."  Alternatively, under R.C. 4141.291(A)(2) a claimant may

requalify for benefits if he or she "accept[s] a recall from a prior employer and

cannot establish that a substantial loss of employment rights, benefits, or pension

was involved in the recall" * * * *or* [ ] accept[s] other employment subject to this

chapter [and otherwise satisfies the additional requirements]." (Emphasis added.)

The General Assembly's use of the conjunction "or" in R.C. 4141.291(A)(2)

indicates that "accepting a recall to employment" and "accepting other

employment" are both paths to requalifying for unemployment compensation

benefits under R.C. 4141.291(A)(2).  See *State v. Floyd Thomas*, 4th Dist.

Adams No. 6CA825, 2007-Ohio-5340, ¶ 14 (Using the conjunction "or" indicates

a "disjunctive" intent, i.e. a statute can be satisfied by "establish[ing] one of the

two scenarios.").  Accordingly, we interpret R.C. 4141.291(A)(2) as permitting the

requalification of a claimant who is "recalled to work by a prior employer," *or* a

claimant who accepts "other employment" that is subject to unemployment

compensation, assuming they can satisfy the other enumerated requirements in

R.C. 4141.291(A)(2), including for the claimant who obtains "other employment"

that he or she

> obtain[s] such employment while still employed or commences
> such employment within seven calendar days after the last day
> of employment with the prior employer, and subsequent to the
> last day of the employment with the prior employer, works three
> weeks in the new employment and earns wages equal to one
> and one-half times the individual's average weekly wage or one
> hundred eighty dollars, whichever is less.

{¶38} Nevertheless, we reject Appellee's argument that he re-

qualified for benefits under R.C. 4141.291, or that he was otherwise

eligible for benefits under R.C. 4141.29 contrary to the Commission

determination.  Appellant applied for benefits on September 8, 2018, but

had worked at Larry's for less than two weeks.  Therefore, at the time of

his application, Appellee was not eligible for benefits under R.C. 4141.29

as the Commission held, nor did he requalify for benefits under the

special exception in 4141.291(A) because he had not satisfied the

requalification requirements under either provision, e.g. he had not been

employed for 6 weeks under R.C. 4141.29(G), or 3 weeks under R.C.

2929.291(A)(2).  Accordingly, the Commission's decision that Appellee

did not re-qualify for benefits at the time of his application, being

September 8, 2018, was lawful, reasonable, and supported by the weight

of the evidence.


CONCLUSION

**{¶39}** We hold that the Commission's determination that Appellee was

employed with Sonic, subsequently quit without just cause disqualifying him from

receiving benefits, and failed to re-qualify for benefits at the time of his

September 8, 2018, application, under R.C. 4141.29 or R.C. 4141.291(A)(2) was

reasonable, lawful, and supported by the manifest weight of the evidence.

Accordingly, we reverse the trial court's judgment and reinstate the

Commission's decision.


**JUDGMENT IS REVERSED AND DECISION OF THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION IS REINSTATED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED AND THE DECISION OF THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION IS REINSTATED and costs to Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J.:  Concur in Judgment and Opinion.
Smith, P.J.: Concur in Judgment Only.


For the Court,


BY: _____
     Kristy S. Wilkin, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**